IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RIVIERA FINANCE OF TEXAS, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-737C<br>(Chief Judge Damich) |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States respectfully requests that the Court grant summary judgment in favor of the United States upon the grounds that there are no genuine issues of material fact, and judgment should be entered in favor of the United States as a matter of law. In support of this motion, we rely upon the following brief, the allegations of the complaint, and the concurrently filed defendant's proposed findings of uncontroverted facts and attached appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUE

1. Whether plaintiff, Riviera Finance ("Riviera"), lawfully received an assignment of the contract's proceeds thereby requiring the defendant, United States, to make payment to Riviera rather than the contractor.

2. Whether defendant, the United States, is entitled to recoup payment made to Riviera because the payment was made in violation of law.

STATEMENT OF FACTS[1]

On February 2, 1999, the Defense Distribution Office ("DDC") issued contract No. SP3100-99-M-7045, an order for supply and services, to Optical Fiber Network Inc ("Optical Fiber"). The order was for the purchase of 27,500 feet of fiber optical cable. The order informed the contractor that invoices should be mailed to the Defense Finance and Accounting Service ("DFAS"). The order stated that the contractor's address and the payment address were the same. App. 1-3.

In a letter dated February 17, 1999, Riviera notified DFAS and the contracting officer that Riviera was an assignee of the proceeds of a February 17, 1999 invoice from Optical Fiber. App. 5-6. Riviera attached a notice of assignment to this letter stating that payment of the invoice should be made to Riviera. App. 7. The attachment was purportedly signed by both representatives from Riviera and Optical Fiber. App. 7. In a letter dated February 23, 1999, Optical Fiber requested that DDC amend the contract "to show that the recipient of funds for services rendered be addressed to Riviera Finance." App. 8. The letter stated that Riviera was Optical Fiber's finance company and provided DDC its address. On February 26, 1999, the contracting officer modified the contract to change the remit address to Riviera. App. 9.

On March 19, 1999, Optical Fiber submitted invoice No. 7045, dated February 12, 1999, that stated that 28,500 feet of cable had been shipped. The invoice totaled $44,745. Optical Fiber's address was blacked out. On May 10, 1999, DFAS paid Optical Fiber $44,745. App. 4.

On July 1, 1999, Optical Fiber faxed a second invoice to DFAS, invoice No. 7045-b, for

[1] The United States also relies upon the concurrently filed "Defendant's Proposed Findings of Uncontroverted Facts," filed pursuant to RCFC 56(d).

$1,982.91. App. 10. DFAS made payment upon this invoice to Riviera.

## ARGUMENT

### I. Standard For Summary Judgment

Summary judgment pursuant to RCFC 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); Paxson Electric Co., Inc. v. United States, 14 Cl. Ct. 634, 642 (1988). The moving party must identify the legal and factual bases for its motion and specify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987). The claims at issue may then be resolved on summary judgment unless the responding party establishes there is a factual dispute which must be tried. Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1562-63.

In this case, the material facts are not subject to a genuine dispute, and the United States is entitled to judgment as a matter of law. Accordingly, the Court should grant summary judgment in favor of the United States.

### II. The Jurisdiction Of This Court Is Limited

Riviera is not in privity with the United States. Accordingly, this case concerns only whether Riviera and Optical Fiber validly executed an assignment of the contract's proceeds to bind the United States.

Like its predecessors, this is a court of limited jurisdiction. Heagy v. United States, 12 Cl. Ct. 694, 697 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988)(Table); Dynalectron Corp. v.

United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(Table); see Soriano v. United States, 352 U.S. 270, 273 (1956). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. at 1.

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

However, the Tucker Act does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). A claimant, therefore, must look beyond this jurisdictional statute and establish

some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within the jurisdiction of this Court. United States v. Connolly, 716 F.2d at 885.

In its complaint, Riviera alleges jurisdiction pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 601. Comp. ¶ 2. However, because no privity of contract exists between Riviera and the United States, this Court lacks jurisdiction to consider its claim pursuant based upon contract. However, as Riviera is a purported assignee of the proceeds of the contract, Riviera's claim only survives review in this Court pursuant to the Anti-Assignment Acts, 37 U.S.C. § 3727 and 41 U.S.C. § 14. However, Riviera did not comply with the specific statutory and regulatory requirements of the Anti-Assignment Acts in order to perfect an assignment of the contract's proceeds. As Riviera is neither in privity with the Government nor is it an assignee of the contract's proceeds, summary judgment should be granted in favor of the Government.

## III. Riviera Did Not Comply With The Anti-Assignment Acts

### A. The Purpose And Requirements Of The Assignment of Claims Act and Assignment of Contracts Act

Unless specific conditions are met, assignments of Government contracts are barred by the Assignment of Claims Act, 31 U.S.C. § 3727 (1994), and Assignment of Contracts Act, 41 U.S.C. § 15 (1994) (the "Anti-Assignment Acts"), which contain a "broad nullification of any voluntary assignment of Government contracts except as allowed by the Act." American National Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 14 (1990). This proscription

> serves a variety of purposes including preventing unrelated third parties not in privity with the Government from acquiring an enforceable interest in claims against it, obviating the investigation of alleged assignments, enabling the Government to deal only with

> the original claimant, and protecting the United States.

Id. at 14-15; see George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173 (1993) (Anti-Assignment Acts serve same purposes as privity requirement), aff'd, 39 F.3d 1197 (Fed. Cir. 1994). These statutes were enacted so that the Government would always be able to "deal exclusively with the original claimant" and would always be aware of its obligations. Patterson v. United States, 173 Ct. Cl. 819, 823, 354 F.2d 327, 329 (1965). The purpose of the Anti-Assignment Acts is three-fold:

> first, to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee.

Kingsbury v. United States, 215 Ct. Cl. 136, 144, 563 F.2d 1019, 1024 (1977) (emphasis added).

Assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727, are invalidated, thereby returning the parties to the status quo ante. Colonial Navigation Company v. United States, 149 Ct. Cl. 242, 181 F. Supp. 237 (1960). Pursuant to the Assignment of Contracts Act, 41 U.S.C. § 15, contracts wrongfully assigned may be annulled by the Government. Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.5, 614 F.2d 740, 744 n.5 (1980); McPhail v. United States, 149 Ct. Cl. 179, 181 F. Supp 251 (1960).

The sole exception to the prohibition of assignments is for the benefit of financing institutions. 31 U.S.C. § 3727 (1994). However, even in this circumstance, the assignee must establish, among other things, "that it (1) is a qualified financial institution; [and] (2) loaned money or at least made money available for the performance of the [underlying] contract."

American National Bank & Trust Co. v. United States, 23 Cl. Ct. 542, 546 n.4 (1991).

To effect a valid assignment, the assignor must comply with several requirements listed in the Anti-Assignment Acts and the implementing regulations. The requirements of the Anti-Assignment Acts must be strictly construed to determine whether an attempted assignment is valid. American Fin. Assocs., Ltd. v. United States, 5 Fed. Cl. 761, 768-69 (1984) (holding that failure to notify disbursing officer fatal to an alleged assignment); Banco Bilboa Vizcaya-Puerto Rico v. United States, 48 Fed. Cl. 29, 33 (2000). Specifically, the assignee is required to file written notification of the assignment and a copy of the assignment instrument with both the contracting officer and the disbursing official. 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 15(b)(3); 48 C.F.R. 32.802(e). In addition to the basic statutory requirements, the FAR specifically details the manner in which a valid assignment can be secured. Pursuant to 48 C.F.R. 32.805, the corporation assigning the contract must provide the Government the assignment instrument. The assignment instrument must be executed by the authorized representative, attested by the corporation secretary or assistant secretary, and impressed with the corporate seal or accompanied by a true copy of the resolution of the corporation's board authorizing the assignment. The FAR provides an example of a Notice of Assignment that comports with the requirements of the statutes and regulations, including a reference to the attachment of the assignment agreement to the notice. 48 C.F.R. 32.805(c). Additionally, the FAR provides that assignments of contract proceeds must assign all unpaid amounts payable pursuant to the contract. 48 C.F.R. 32.805(d)(1).

As evidenced by the requirements of the Anti-Assignment Acts and the implementing regulations, the assignment of the proceeds of a contract contemplates the adherence to a detailed

procedure to protect both the Government and the contractor. Accordingly, an assignment prohibited by the Assignment of Claims Act "makes the assignment 'absolutely null and void.'" Kingsbury, 215 Ct. Cl. at 141, 563 F.2d at 1022.

B. Riviera Failed To Provide The Contracting Officer And The Dispersing Officer The Assignment Instrument

In contrast to the requirements of 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 15(b)(3); 48 C.F.R. 32.802(e), Riviera did not provide the contracting officer and the dispersing officer the assignment instrument that purportedly assigned the proceeds of the contract. As detailed above, the failure to do so renders the assignment void. Although, Riviera and Optical Fiber did provide notice to both the contracting officer and the dispersing officer that the companies intended to assign the contract, notice is only one portion of the assignment requirement. The parties failure to also provide the actual instrument of assignment fundamentally contradicts the specific requirements of the Anti-Assignment Acts.

In contrast to the procedure and protections detailed in the Anti-Assignment Acts, the failure to provide the assignment instrument undermined the Government's legal authority to pay proceeds to any entity other than the contractor. OPM v. Richmond, 496 U.S. 414, 424 (1990) (the appropriations clause of the Constitution prohibits the Government from paying money from the Treasury absent a Congressional appropriation). As assignments are generally prohibited, the dispersing officer had no legal authority to disperse payment to Riviera unless the narrow and specific requirements of the Anti-Assignment Acts are fulfilled. 41 U.S.C. § 15(a). As Riviera maintained no contractual relationship with the Government, Riviera is not in privity with the Government. Accordingly, Riviera's only possible claim is grounded in the purported

assignment. As Riviera and Optical Fiber did not comply with the requirements of the Anti-Assignment Acts by failing to provide the assignment instrument, their attempted transfer of the contract "cause[s] the annulment of the contract or order transferred, so far as the United States is concerned." 41 U.S.C. § 15.

In addition to undermining the dispersing officer's legal authority to pay Riviera, the parties' failure to comply with the Anti-Assignment Acts undermined the basic protections embodied in the Anti-Assignment Acts. Without the assignment instrument, the Government could be not be assured that Riviera was actually a financing institution (31 U.S.C. § 3727); that persons with authority to bind Optical Fiber had agreed to the assignment (48 C.F.R. 32.805(a)(1)); nor that the agreement covered all unpaid amounts payable under the contract (41 U.S.C. § 15(b)(2). These basic requirements protect the Government from paying the wrong party and violating the clear mandate of the Anti-Assignment Acts.

The contracting officer's actions did not waive the requirements of the Anti-Assignment Acts. Although the Government may waive the requirements of the Anti-Assignment Acts during the course of a contract's administration, the contracting officer in this case did not assent to the assignment. <u>See</u> <u>Norwest Bank Arizona v. United States</u>, 37 Fed. Cl. 605 (1997). Pursuant to the request of the contractor, the contracting officer did modify the payment delivery address to reflect Riviera but did not modify the contract to make Riviera the payee of the contract proceeds. The contracting officer's modification in this case did not alter the payee. While the contracting officer acknowledged that the payment should be sent to Riviera, the contracting officer did not authorize Riviera to become the payee of the contract proceeds. The ministerial alteration of the payment address does not demonstrate an intent by the contracting

officer to change the payee of the contract or waive the detailed requirements of the Anti-Assignment Acts. The actions of the contracting officer do not rise to the level of clear assent to the assignment required to demonstrate waiver. Banco Bilboa Vizcaya-Puerto Rico v. United States, 48 Fed. Cl. 29, 34 (2000) (the purported assignee must show an affirmative manifestation of the 'meeting of minds' between the assignee and the government, sufficient to satisfy the standard measure of assent in contract law").

## IV. The Government Is Entitled To Recovery Of Funds Erroneously Paid To Riviera

The Government may recover funds that its agents have wrongfully, erroneously, or illegally paid. No statute is necessary to authorize the Government to sue in such a case. United States v. Wurts, 303 U.S. 414, 415 (1938); Fansteel Metallurgical Corp. v. United States, 145 Ct. Cl. 496, 499-500, 172 F.Supp. 268, 270 (1959). Nor can the Government's recovery be estopped by the mistakes of its officers or agents. See Aetna Casualty & Surety Co. v. United States, 208 Ct. Cl. 515, 520, 526 F.2d 1127, 1130 (1975), cert. denied, 425 U.S. 973 (1976). Payments made pursuant to invalid assignment may be recovered by the Government. American National Bank and Trust Company v. United States, 23 Cl. Ct. 542 (1991).

As demonstrated above, Riviera did not obtain a valid assignment of the contract in this case. Absent a valid assignment, the payment made to Riviera was erroneous and contrary to statute. As DFAS erroneously paid Riviera $1,982.91 pursuant to the second invoice Optical Fiber submitted, the United States is entitled to recovery of the funds paid Riviera.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court grant the Government's motion for summary judgment.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick by Bryant G. Snee

MARK A. MELNICK
Assistant Director

s/ Thomas B. Fatouros

THOMAS B. FATOUROS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-5958
Fax: (202) 514-7965

Attorneys for Defendant

OF COUNSEL:
CYNTHIA CUMMINGS
Senior Associate General Counsel
Defense Finance and Accounting Service GA/CO
Room B712
P.O. Box 182317
Columbus, OH 43218

May 15, 2003

Appendix Index

Contract.......................................................................................................... 1

Invoice dated February 17, 1999................................................................. 4

Notice of Assignment.................................................................................... 5

Letter from Optical Fiber dated February 23, 1999...................................... 8

Contract Modification.................................................................................... 9

Invoice dated July 1, 1999............................................................................ 10

Contracting Officer's Final Decision ........................................................... 11

Riviera Claim for Compensation ................................................................. 12