**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| RIVIERA FINANCE OF TEXAS, INC.<br>Plaintiff,<br>vs.<br>THE UNITED STATES OF AMERICA,<br>Defendant | Case No. 02-737C |

**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Riviera Finance of Texas, Inc., by and through the undersigned counsel, and moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for Summary Judgment against Defendant, The United States of America, on the grounds that, as shown by the pleadings filed in this matter and any depositions and discovery propounded in this matter as of the date of the hearing on this Motion, there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law against Defendant.

In the event the Court does not render judgment for all the relief requested, pursuant to Rule 56(d) of the Rules of Civil Procedure, Plaintiff further moves the Court to examine the pleadings and the evidence before it and ascertain what material facts are actually and in good faith controverted, and enter an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings as are just.

In support of this Motion, Plaintiff relies on the *Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment* attached hereto as Exhibit A, which is incorporated herein by reference.

This the 6th day of June, 2003.

**POYNER & SPRUILL LLP**

S. Andrew Jurs

S. Andrew Jurs
N.C. State Bar No. 21345
Deborah M. Tyson
N.C. State Bar No. 28134
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
(704) 342-5250

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing *Plaintiff's Cross Motion for Summary Judgment* by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

Thomas B. Fatouros
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005

This the 6th day of June, 2003.

S. Andrew Jurs

S. Andrew Jurs
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 342-5301
Fax: (704) 342-5264
e-mail: sajurs@poynerspruill.com

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| RIVIERA FINANCE OF TEXAS, INC.<br>Plaintiff,<br>vs.<br>THE UNITED STATES OF AMERICA,<br>Defendant | Case No. 02-737C |

**PLAINTIFF'S BRIEF AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Riviera Finance of Texas, Inc. ("Riviera"), by and through undersigned counsel, and respectfully submits this Response To Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS[1]**

On or about July 6, 1998, Riviera entered into a Factoring Agreement ("Agreement") with Optical Fiber Network, Inc. ("Optical Fiber Network"). App. A-1-4. Under the Agreement, Riviera advanced money to Optical Fiber Network and received a security interest in and an assignment of Optical Fiber Network's "presently existing or hereafter arising, now owned or hereafter acquired accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, general intangibles, and all books and records pertaining to accounts and all proceeds of the foregoing property" (the "Collateral"). Under the Agreement, Riviera took a security interest in all of Optical Fiber Network's accounts receivables and other collateral. Under the terms of the Agreement, Riviera would advance funds to Optical Fiber Network for an assignment of specified receivables. Receivables were assigned to Riviera

pursuant to a separate document entitled Schedule of Accounts. App. D-1. According to paragraph 47 of the Factoring Agreement, "[o]nce RIVIERA has purchased an Account, the Account and the payment from Customer as to that Account is the sole and exclusive property of RIVIERA." App. A-3. On August 14, 1998, Riviera perfected its security interest in the Collateral by filing financing statements with the North Carolina Secretary of State and the Guilford County Register of Deeds. App. B-1-2.

On February 2, 1999, the Defense Distribution Center Procurement Office in New Cumberland, Pennsylvania ("DDC-AA"), entered Contract No. SP310099M7045 with Optical Fiber Network for the provision of optical fiber cable (the "Contract"). App. C-1-3. The contract terms provided that Optical Fiber Networks would ship 27,500 feet of fiber optical cable at a price of $1.57 per foot for a total contract price of $43,175.00. On March 3, 1999, Optical Fiber Network assigned to Riviera an account receivable from DDC-AA and the Defense Finance and Accounting Service ("DFAS") in the amount of $44,745.00 (the "Receivable"). Upon assignment, the Receivable became the sole property of Riviera pursuant to the Factoring Agreement. After the Receivable was assigned to Riviera, Riviera advanced funds to Optical Fiber Network in reliance that it would receive payment on the Receivable. Riviera's reliance was based on the fact that, on February 17, 1999, Riviera sent DFAS a letter titled "Confirmation of Payment on Optical Fiber Network, Inc. Invoices Assigned to Riviera Finance." App. E-1-3. Additional notice was provided to DFAS by way of a letter dated February 23, 1999 from David Middleton, the president of Optical Fiber Networks, stating that it would like to amend the Contract to show that Riviera Finance should be recipient of payments of funds due under the

---

[1] Riviera also relies upon the contemporaneously filed "Plaintiff's Proposed Findings of Uncontroverted Facts," filed pursuant to RCFC 56(d).

Contract. App. F-1. The amended Contract was signed by Michael Delcima on behalf of the United States of America on February 26, 1999. App. F-2. The final notice to DFAS consisted of Optical Fiber Networks' invoice which stated that all checks under the invoice were to be made payable to Riviera (the "Invoice"). App. G-1. Despite the fact that Riviera gave these various notices to DFAS that payment on the Receivable should be made directly to Riviera, the payment for the Receivable was sent directly to Optical Fiber Network. App. H-1. On May 14, 1999, Optical Fiber Network then negotiated the check paying the Receivable. Defendant owes Riviera the sum of $44,745.00 because Optical Fiber Network was paid for the Receivable instead of Riviera despite notice to various governmental payors.

## ARGUMENT

It is well established that, upon their Motion for Summary Judgment, the burden is on Defendant, as movant, to establish the lack of a triable issue of fact. Any doubt on that issue must be resolved in favor of Riviera. All affidavits, pleadings and other material must be viewed in the light most favorable to Riviera. *See Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 (4th Cir. 1994). As discussed below, application of this standard clearly calls for the denial of the Defendant's Motion for Summary Judgment.

### I. Defendant's Argument that Riviera did not receive a lawful assignment of the Optical Fiber Network contract proceeds is without merit.

Defendant argues that Riviera did not comply with the Anti-Assignment Act, and thus Riviera does not have a claim against Defendant. However, prior case law based on similar facts as are present in this case has uniformly held that an assignment is valid if the government waives the requirements of the Anti-Assignment Act. Defendant in this case did waive the requirements of the Anti-Assignment Act, and thus the assignment is valid and enforceable against Defendant.

Assignment effectively binds the government if certain requirements of the Anti-Assignment Act are satisfied, or if the government waives those requirements and recognizes the assignment. The government may waive the requirements of the Anti-Assignment Act by agreeing to the assignment and by taking some affirmative action which recognizes the assignment. Whether the government has waived the requirements enumerated in the Act is determined by totality of circumstances test, under which the court must consider knowledge, assent, and any actions consistent with terms of assignment. See American Nat'l Bank & Trust Co. v. United States, 23 Cl. Ct. 542 (1991).

A. Waiver of Anti-Assignment Act: Defendant had knowledge of the assignment.

In the present case, Defendant first had knowledge of the assignment on February 17, 1999, when Riviera sent DFAS a letter which advised that all future payments on Optical Fiber Network invoices should be directed to Riviera. The February 17, 1999, letter also included a Notification Agreement signed by both Riviera and Optical Fiber Networks which served as formal notification that payment on the invoices were assigned to Riviera. Additional notice was provided to DFAS on February 23, 1999, via a letter from David Middleton, the president of Optical Fiber Networks, stating that Optical Fiber Networks would like to amend the Contract and show Riviera Finance as payee of funds due under the Contract. Further notice of the assignment was given to DFAS through Optical Fiber Networks' invoice number 7045, which stated that all checks under the invoice were to be made payable to Riviera.

B. Waiver of Anti-Assignment Act: Defendant assented to the assignment.

On February 19, 1999, DFAS took affirmative action to recognize the assignment when Sylvia Garcia acknowledged receipt of the February 17, 1999 letter which first advised of the assignment of payment to Riviera. DFAS took further affirmative action to recognize the

assignment when the Contract was amended to reflect Riviera as payee and signed by Michael Delcima on behalf of the United States of America on February 26, 1999. Furthermore, on March 2, 1999, Sylvia Garcia signed the February 17, 1999, letter confirming the assignment, and by signing the letter, Ms. Garcia also expressly confirmed that "[t]he undersigned acknowledges that he/she has the authority to sign this statement on behalf of the Account Debtor [DFAS]." Finally, the fact that DFAS made a payment to Riviera in the amount of $1,982.91 on the second invoice submitted by Optical Fiber further supports the finding that DFAS assented to the assignment.

Furthermore, Defendant expressly agreed to make Riviera payee on the invoices that were formerly payable to Optical Fiber Network and did make Riviera payee on one of the checks issued from such invoices. The court in Norwest Bank Arizona, N.A. v. United States held that the government waived any defects in the assignment of a contract from a subcontractor to a bank, and thus waived the requirements of the Anti-Assignment Act, when the government expressly agreed to pay the bank by modifying the contract and naming the bank as payee. See 37 Fed. Cl. 605 (1997). The court went on to find that the subcontractor was a creditor beneficiary of the contract between the government and the contractor and therefore could bring suit under the contract as a third party beneficiary, and furthermore the bank had standing to bring suit since a judgment for the bank was equivalent to a judgment for the subcontractor. Likewise, Riviera became a third party beneficiary of the Contract when DFAS amended the Contract on February 26, 1999, and thus Riviera now stands in the shoes of Optical Fiber Network and has standing to enforce the right to receive payment on the invoice.

Defendant cites Banco Bilbao Vizcaya v. United States in support of its contention that Riviera did not meet the requirements of the Anti-Assignment Act. However, that case is clearly

distinguishable from the facts of the present case. In Banco Bilbao, the United States did not waive the Anti-Assignment Act because plaintiff failed to notify the surety of the alleged assignment and the plaintiff did not comply with any of the notification requirements and no payments were made to the alleged assignee in keeping with plaintiff's alleged assignment. See Banco Bilbao Vizcaya v. United States, 48 Fed. Cl. 29 (2000). However, the court did state that waiver of the act is possible under certain circumstances: "[w]aiver of the Act has only been recognized where the government has either affirmatively acknowledged an assignment in writing or made payments consistent with the alleged assignment." Id. at 34. The Banco Bilbao court further supported its ruling by finding that there were no "after-the-fact representations made…recognizing the assignment" and the government "never took a single affirmative step manifesting recognition of the assignment." Id. at 34-35. In this case, Riviera did provide the required notice of assignment to DFAS, and furthermore DFAS made an "after-the-fact representation" that it would recognize the assignment by amending the Contract. DFAS also made a payment to Riviera after the assignment took effect. If DFAS had not chosen to recognize the assignment, it would not have made any efforts to change the Contract with Optical Fiber Networks and it certainly would not have made a payment to Riviera. Therefore, the Banco Bilbao case does not provide any support to the Defendant's position.

Defendant states that the proper formal notice requirements were not met by Riviera. However, when the government has knowledge of an assignment and affirmatively assents to such assignment, then the assignment is enforceable regardless of whether all of the particular notice requirements of the Anti-Assignment Act are met. Based on similar circumstances to the present case, the court in American Financial Associates, Ltd. V. United States held that despite lack of effective notice to disbursing officer of assignment of contract, government is liable

where it evidences recognition of assignment by its knowledge and assent to assignment. See 5 Cl. Ct. 761 (1984).

## II. Defendant's Argument that its dispersing officer did not have authority to waive the requirements of the Anti-Assignment Act is without merit.

Defendant contends that the dispersing officer had no legal authority to disperse payment to Riviera unless the requirements of the Anti-Assignment Act were fulfilled. However, Tuftco Corp. v. United States was based on facts very similar to the facts of this particular case, and in that case the court found that the anti-assignment statute was waived and the government recognized the assignment so as to be liable for payments wrongfully made to assignor where the contracting officer had basic authority to waive, where he was aware of, assented to and, in the totality of circumstances, recognized assignment. See 222 Ct. Cl. 277, 614 F.2d 740 (1980). The court went on to find that the assignee's agreement to the assignment was conditioned upon its belief that the payments would be made to it rather than to the assignor. Likewise, in the present case, Riviera agreed to the assignment only upon condition that DFAS identify Riviera as the payee on invoices that were formerly to be paid to Optical Fiber Networks, the assignor. Had Riviera not been assured that the contract would be modified, Riviera would not have advanced funds to Optical Fiber Network for an assignment of the receivables from DFAS. Furthermore, the Tuftco court noted that a true copy of the instrument of assignment was never given to the government, and even such failure to meet this basic requirement did not prevent the government from waiving the requirements of the Anti-Assignment Act and recognizing the assignment. In this case, Riviera did comply with the requirement of providing the instrument of assignment to DFAS, and thus this factor weighs even more heavily in finding that DFAS had knowledge of the assignment and assented to the assignment of receivables to Riviera.

> [T]he contracting officer clearly assented to the transfer of rights under the contract [to D&H], because the contracting officer expressly adopted the new payment arrangement as part of the contract. Accordingly, even if the [July 6,1989,] modification is regarded as reflecting an assignment of rights [from CIM to D&H], the modification cannot be dismissed as unenforceable on the ground that its inclusion in the contract was beyond the authority of the contracting officer to bind the government. D&H Distributing Co. v. United States, 102 F.3d 542, 546 (Fed. Cir. 1996). The promisor can be held liable on that obligation to the assignee if the promisor makes payments to the assignor, rather than to the assignee in accordance with the terms of the assignment. Id. at 547. Thus, if the [July 6, 1989,] modification is characterized as an assignment of rights under the contract, assented to by the government, it is appropriate to hold the government liable [to D&H] for its failure to make payment in accordance with the contract terms.

Id. at 548. Just as in D&H Distributing Company, DFAS expressly adopted the amended Contract and thus should be bound to make the payments as required under the amended Contract. Once the government has received timely notice of an assignment, it is deemed to pay the assignor at its peril. See Central National Bank v. of Richmond v. United States, 117 Ct. Cl. 389, 399, 91 F.Supp. 738 (1950). DFAS is liable to Riviera because it had an obligation to make payments to Riviera and not Optical Fiber Networks, and thus the government should be held liable "for its failure to make payment in accordance with the contract terms."

**III. Defendant's Argument that Riviera is not in privity with Defendant is without merit.**

Defendant argues that Riviera is not in privity with DFAS. However, the government may recognize assignment and waive its protections under Anti-Assignment Act in furtherance of its own interests, and the required privity of contract between assignee and government is present if totality of circumstances establishes that government has recognized assignment. See Johnson Controls World Servs. v. United States, 44 Fed. Cl. 334 (1999). DFAS waived the Anti-

Assignment Act by recognizing the assignment to Riviera and amending the Contract to reflect Riviera as payee, and thus Riviera has privity of contract to enforce the assignment.

**IV. The Assignment is enforceable notwithstanding compliance with the Anti-Assignment Act.**

In the event that this court finds that the assignment is not enforceable because the requirements of the Anti-Assignment Act were not met, then the assignment should nonetheless be enforceable on equitable grounds. Where an express contract is void due to invalid assignment under 41 USCS § 15 [predecessor to 31 USCS § 3727], assignee who has delivered goods to government may recover on implied contract in quantum meruit. See Heathfield's Case, 8 Ct. Cl. 213 (1872); see also Wheeler's Case, 5 Ct. Cl. 504 (1869) (Where there has been delivery of goods, duly accepted by United States, under assigned contract, action may be maintained by contractor for use of assignee in quantum meruit). Since Defendant received the benefit of the goods which were to be provided under the contract, an unjust windfall would result if DFAS were able to circumvent its obligation to pay Riviera.

**V. Defendant's Argument that it is entitled to recoup payment made to Riviera is without merit.**

Defendant made a payment to Riviera after notice of assignment, and after DFAS amended the Contract to reflect Riviera as payee on the invoices. Riviera was the rightful recipient of the funds paid from the second invoice, as noted on the invoice and the amended Contract. Therefore, Riviera is not obligated to return such funds to which it was rightly entitled under the Contract.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment should be denied.

This 6th day of June, 2003.

**POYNER & SPRUILL LLP**

S. Andrew Jurs
N.C. State Bar No. 21345
Deborah M. Tyson
N.C. State Bar No. 28134
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
(704) 342-5250

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing *Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment* by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

Thomas B. Fatouros
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005

This the 6th day of June, 2003.

S. Andrew Jurs

S. Andrew Jurs
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 342-5301
Fax: (704) 342-5264
e-mail: sajurs@poynerspruill.com