**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| RIVIERA FINANCE OF TEXAS, INC.<br>Plaintiff,<br>vs.<br>THE UNITED STATES OF AMERICA,<br>Defendant | Case No. 02-737C |

**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Riviera Finance of Texas, Inc., by and through the undersigned counsel, and moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for Summary Judgment against Defendant, The United States of America, on the grounds that, as shown by the pleadings filed in this matter and any depositions and discovery propounded in this matter as of the date of the hearing on this Motion, there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law against Defendant.

In the event the Court does not render judgment for all the relief requested, pursuant to Rule 56(d) of the Rules of Civil Procedure, Plaintiff further moves the Court to examine the pleadings and the evidence before it and ascertain what material facts are actually and in good faith controverted, and enter an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings as are just.

In support of this Motion, Plaintiff relies on the *Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment* attached hereto as Exhibit A, which is incorporated herein by reference.

This the 6th day of June, 2003.

**POYNER & SPRUILL LLP**

S. Andrew Jurs
N.C. State Bar No. 21345
Deborah M. Tyson
N.C. State Bar No. 28134
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
(704) 342-5250

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing *Plaintiff's Cross Motion for Summary Judgment* by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

Thomas B. Fatouros
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005

This the 6th day of June, 2003.

S. Andrew Jurs
S. Andrew Jurs
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 342-5301
Fax: (704) 342-5264
e-mail: sajurs@poynerspruill.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RIVIERA FINANCE OF TEXAS, INC.<br>Plaintiff,<br>vs.<br>THE UNITED STATES OF AMERICA,<br>Defendant | Case No. 02-737C |

**PLAINTIFF'S BRIEF AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Riviera Finance of Texas, Inc. ("Riviera"), by and through undersigned counsel, and respectfully submits this Response To Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS[1]**

On or about July 6, 1998, Riviera entered into a Factoring Agreement ("Agreement") with Optical Fiber Network, Inc. ("Optical Fiber Network"). App. A-1-4. Under the Agreement, Riviera advanced money to Optical Fiber Network and received a security interest in and an assignment of Optical Fiber Network's "presently existing or hereafter arising, now owned or hereafter acquired accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, general intangibles, and all books and records pertaining to accounts and all proceeds of the foregoing property" (the "Collateral"). Under the Agreement, Riviera took a security interest in all of Optical Fiber Network's accounts receivables and other collateral. Under the terms of the Agreement, Riviera would advance funds to Optical Fiber Network for an assignment of specified receivables. Receivables were assigned to Riviera

pursuant to a separate document entitled Schedule of Accounts. App. D-1. According to paragraph 47 of the Factoring Agreement, "[o]nce RIVIERA has purchased an Account, the Account and the payment from Customer as to that Account is the sole and exclusive property of RIVIERA." App. A-3. On August 14, 1998, Riviera perfected its security interest in the Collateral by filing financing statements with the North Carolina Secretary of State and the Guilford County Register of Deeds. App. B-1-2.

On February 2, 1999, the Defense Distribution Center Procurement Office in New Cumberland, Pennsylvania ("DDC-AA"), entered Contract No. SP310099M7045 with Optical Fiber Network for the provision of optical fiber cable (the "Contract"). App. C-1-3. The contract terms provided that Optical Fiber Networks would ship 27,500 feet of fiber optical cable at a price of $1.57 per foot for a total contract price of $43,175.00. On March 3, 1999, Optical Fiber Network assigned to Riviera an account receivable from DDC-AA and the Defense Finance and Accounting Service ("DFAS") in the amount of $44,745.00 (the "Receivable"). Upon assignment, the Receivable became the sole property of Riviera pursuant to the Factoring Agreement. After the Receivable was assigned to Riviera, Riviera advanced funds to Optical Fiber Network in reliance that it would receive payment on the Receivable. Riviera's reliance was based on the fact that, on February 17, 1999, Riviera sent DFAS a letter titled "Confirmation of Payment on Optical Fiber Network, Inc. Invoices Assigned to Riviera Finance." App. E-1-3. Additional notice was provided to DFAS by way of a letter dated February 23, 1999 from David Middleton, the president of Optical Fiber Networks, stating that it would like to amend the Contract to show that Riviera Finance should be recipient of payments of funds due under the

---

[1] Riviera also relies upon the contemporaneously filed "Plaintiff's Proposed Findings of Uncontroverted Facts," filed pursuant to RCFC 56(d).

Contract. App. F-1. The amended Contract was signed by Michael Delcima on behalf of the United States of America on February 26, 1999. App. F-2. The final notice to DFAS consisted of Optical Fiber Networks' invoice which stated that all checks under the invoice were to be made payable to Riviera (the "Invoice"). App. G-1. Despite the fact that Riviera gave these various notices to DFAS that payment on the Receivable should be made directly to Riviera, the payment for the Receivable was sent directly to Optical Fiber Network. App. H-1. On May 14, 1999, Optical Fiber Network then negotiated the check paying the Receivable. Defendant owes Riviera the sum of $44,745.00 because Optical Fiber Network was paid for the Receivable instead of Riviera despite notice to various governmental payors.

## ARGUMENT

It is well established that, upon their Motion for Summary Judgment, the burden is on Defendant, as movant, to establish the lack of a triable issue of fact. Any doubt on that issue must be resolved in favor of Riviera. All affidavits, pleadings and other material must be viewed in the light most favorable to Riviera. *See Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 (4th Cir. 1994). As discussed below, application of this standard clearly calls for the denial of the Defendant's Motion for Summary Judgment.

### I. Defendant's Argument that Riviera did not receive a lawful assignment of the Optical Fiber Network contract proceeds is without merit.

Defendant argues that Riviera did not comply with the Anti-Assignment Act, and thus Riviera does not have a claim against Defendant. However, prior case law based on similar facts as are present in this case has uniformly held that an assignment is valid if the government waives the requirements of the Anti-Assignment Act. Defendant in this case did waive the requirements of the Anti-Assignment Act, and thus the assignment is valid and enforceable against Defendant.

Assignment effectively binds the government if certain requirements of the Anti-Assignment Act are satisfied, or if the government waives those requirements and recognizes the assignment. The government may waive the requirements of the Anti-Assignment Act by agreeing to the assignment and by taking some affirmative action which recognizes the assignment. Whether the government has waived the requirements enumerated in the Act is determined by totality of circumstances test, under which the court must consider knowledge, assent, and any actions consistent with terms of assignment. See American Nat'l Bank & Trust Co. v. United States, 23 Cl. Ct. 542 (1991).

A. Waiver of Anti-Assignment Act: Defendant had knowledge of the assignment.

In the present case, Defendant first had knowledge of the assignment on February 17, 1999, when Riviera sent DFAS a letter which advised that all future payments on Optical Fiber Network invoices should be directed to Riviera. The February 17, 1999, letter also included a Notification Agreement signed by both Riviera and Optical Fiber Networks which served as formal notification that payment on the invoices were assigned to Riviera. Additional notice was provided to DFAS on February 23, 1999, via a letter from David Middleton, the president of Optical Fiber Networks, stating that Optical Fiber Networks would like to amend the Contract and show Riviera Finance as payee of funds due under the Contract. Further notice of the assignment was given to DFAS through Optical Fiber Networks' invoice number 7045, which stated that all checks under the invoice were to be made payable to Riviera.

B. Waiver of Anti-Assignment Act: Defendant assented to the assignment.

On February 19, 1999, DFAS took affirmative action to recognize the assignment when Sylvia Garcia acknowledged receipt of the February 17, 1999 letter which first advised of the assignment of payment to Riviera. DFAS took further affirmative action to recognize the

assignment when the Contract was amended to reflect Riviera as payee and signed by Michael Delcima on behalf of the United States of America on February 26, 1999. Furthermore, on March 2, 1999, Sylvia Garcia signed the February 17, 1999, letter confirming the assignment, and by signing the letter, Ms. Garcia also expressly confirmed that "[t]he undersigned acknowledges that he/she has the authority to sign this statement on behalf of the Account Debtor [DFAS]." Finally, the fact that DFAS made a payment to Riviera in the amount of $1,982.91 on the second invoice submitted by Optical Fiber further supports the finding that DFAS assented to the assignment.

Furthermore, Defendant expressly agreed to make Riviera payee on the invoices that were formerly payable to Optical Fiber Network and did make Riviera payee on one of the checks issued from such invoices. The court in Norwest Bank Arizona, N.A. v. United States held that the government waived any defects in the assignment of a contract from a subcontractor to a bank, and thus waived the requirements of the Anti-Assignment Act, when the government expressly agreed to pay the bank by modifying the contract and naming the bank as payee. See 37 Fed. Cl. 605 (1997). The court went on to find that the subcontractor was a creditor beneficiary of the contract between the government and the contractor and therefore could bring suit under the contract as a third party beneficiary, and furthermore the bank had standing to bring suit since a judgment for the bank was equivalent to a judgment for the subcontractor. Likewise, Riviera became a third party beneficiary of the Contract when DFAS amended the Contract on February 26, 1999, and thus Riviera now stands in the shoes of Optical Fiber Network and has standing to enforce the right to receive payment on the invoice.

Defendant cites Banco Bilbao Vizcaya v. United States in support of its contention that Riviera did not meet the requirements of the Anti-Assignment Act. However, that case is clearly

distinguishable from the facts of the present case. In Banco Bilbao, the United States did not waive the Anti-Assignment Act because plaintiff failed to notify the surety of the alleged assignment and the plaintiff did not comply with any of the notification requirements and no payments were made to the alleged assignee in keeping with plaintiff's alleged assignment. See Banco Bilbao Vizcaya v. United States, 48 Fed. Cl. 29 (2000). However, the court did state that waiver of the act is possible under certain circumstances: "[w]aiver of the Act has only been recognized where the government has either affirmatively acknowledged an assignment in writing or made payments consistent with the alleged assignment." Id. at 34. The Banco Bilbao court further supported its ruling by finding that there were no "after-the-fact representations made…recognizing the assignment" and the government "never took a single affirmative step manifesting recognition of the assignment." Id. at 34-35. In this case, Riviera did provide the required notice of assignment to DFAS, and furthermore DFAS made an "after-the-fact representation" that it would recognize the assignment by amending the Contract. DFAS also made a payment to Riviera after the assignment took effect. If DFAS had not chosen to recognize the assignment, it would not have made any efforts to change the Contract with Optical Fiber Networks and it certainly would not have made a payment to Riviera. Therefore, the Banco Bilbao case does not provide any support to the Defendant's position.

Defendant states that the proper formal notice requirements were not met by Riviera. However, when the government has knowledge of an assignment and affirmatively assents to such assignment, then the assignment is enforceable regardless of whether all of the particular notice requirements of the Anti-Assignment Act are met. Based on similar circumstances to the present case, the court in American Financial Associates, Ltd. V. United States held that despite lack of effective notice to disbursing officer of assignment of contract, government is liable

where it evidences recognition of assignment by its knowledge and assent to assignment. See 5 Cl. Ct. 761 (1984).

**II. Defendant's Argument that its dispersing officer did not have authority to waive the requirements of the Anti-Assignment Act is without merit.**

Defendant contends that the dispersing officer had no legal authority to disperse payment to Riviera unless the requirements of the Anti-Assignment Act were fulfilled. However, Tuftco Corp. v. United States was based on facts very similar to the facts of this particular case, and in that case the court found that the anti-assignment statute was waived and the government recognized the assignment so as to be liable for payments wrongfully made to assignor where the contracting officer had basic authority to waive, where he was aware of, assented to and, in the totality of circumstances, recognized assignment. See 222 Ct. Cl. 277, 614 F.2d 740 (1980). The court went on to find that the assignee's agreement to the assignment was conditioned upon its belief that the payments would be made to it rather than to the assignor. Likewise, in the present case, Riviera agreed to the assignment only upon condition that DFAS identify Riviera as the payee on invoices that were formerly to be paid to Optical Fiber Networks, the assignor. Had Riviera not been assured that the contract would be modified, Riviera would not have advanced funds to Optical Fiber Network for an assignment of the receivables from DFAS. Furthermore, the Tuftco court noted that a true copy of the instrument of assignment was never given to the government, and even such failure to meet this basic requirement did not prevent the government from waiving the requirements of the Anti-Assignment Act and recognizing the assignment. In this case, Riviera did comply with the requirement of providing the instrument of assignment to DFAS, and thus this factor weighs even more heavily in finding that DFAS had knowledge of the assignment and assented to the assignment of receivables to Riviera.

> [T]he contracting officer clearly assented to the transfer of rights under the contract [to D&H], because the contracting officer expressly adopted the new payment arrangement as part of the contract. Accordingly, even if the [July 6,1989,] modification is regarded as reflecting an assignment of rights [from CIM to D&H], the modification cannot be dismissed as unenforceable on the ground that its inclusion in the contract was beyond the authority of the contracting officer to bind the government. D&H Distributing Co. v. United States, 102 F.3d 542, 546 (Fed. Cir. 1996). The promisor can be held liable on that obligation to the assignee if the promisor makes payments to the assignor, rather than to the assignee in accordance with the terms of the assignment. Id. at 547. Thus, if the [July 6, 1989,] modification is characterized as an assignment of rights under the contract, assented to by the government, it is appropriate to hold the government liable [to D&H] for its failure to make payment in accordance with the contract terms.

Id. at 548. Just as in D&H Distributing Company, DFAS expressly adopted the amended Contract and thus should be bound to make the payments as required under the amended Contract. Once the government has received timely notice of an assignment, it is deemed to pay the assignor at its peril. See Central National Bank v. of Richmond v. United States, 117 Ct. Cl. 389, 399, 91 F.Supp. 738 (1950). DFAS is liable to Riviera because it had an obligation to make payments to Riviera and not Optical Fiber Networks, and thus the government should be held liable "for its failure to make payment in accordance with the contract terms."

**III. Defendant's Argument that Riviera is not in privity with Defendant is without merit.**

Defendant argues that Riviera is not in privity with DFAS. However, the government may recognize assignment and waive its protections under Anti-Assignment Act in furtherance of its own interests, and the required privity of contract between assignee and government is present if totality of circumstances establishes that government has recognized assignment. See Johnson Controls World Servs. v. United States, 44 Fed. Cl. 334 (1999). DFAS waived the Anti-

Assignment Act by recognizing the assignment to Riviera and amending the Contract to reflect Riviera as payee, and thus Riviera has privity of contract to enforce the assignment.

## IV. The Assignment is enforceable notwithstanding compliance with the Anti-Assignment Act.

In the event that this court finds that the assignment is not enforceable because the requirements of the Anti-Assignment Act were not met, then the assignment should nonetheless be enforceable on equitable grounds. Where an express contract is void due to invalid assignment under 41 USCS § 15 [predecessor to 31 USCS § 3727], assignee who has delivered goods to government may recover on implied contract in quantum meruit. See Heathfield's Case, 8 Ct. Cl. 213 (1872); see also Wheeler's Case, 5 Ct. Cl. 504 (1869) (Where there has been delivery of goods, duly accepted by United States, under assigned contract, action may be maintained by contractor for use of assignee in quantum meruit). Since Defendant received the benefit of the goods which were to be provided under the contract, an unjust windfall would result if DFAS were able to circumvent its obligation to pay Riviera.

## V. Defendant's Argument that it is entitled to recoup payment made to Riviera is without merit.

Defendant made a payment to Riviera after notice of assignment, and after DFAS amended the Contract to reflect Riviera as payee on the invoices. Riviera was the rightful recipient of the funds paid from the second invoice, as noted on the invoice and the amended Contract. Therefore, Riviera is not obligated to return such funds to which it was rightly entitled under the Contract.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment should be denied.

This 6th day of June, 2003.

**POYNER & SPRUILL LLP**

S. Andrew Jurs
N.C. State Bar No. 21345
Deborah M. Tyson
N.C. State Bar No. 28134
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
(704) 342-5250

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing *Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment* by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

Thomas B. Fatouros
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005

This the 6th day of June, 2003.

S. Andrew Jurs

S. Andrew Jurs
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 342-5301
Fax: (704) 342-5264
e-mail: sajurs@poynerspruill.com

Appendix Index

Factoring Agreement.........A-1

Financing Statements.........B-1

Contract.........C-1

Schedule of Accounts.........D-1

Letter from Riviera dated February 17, 1999.........E-1

Letter from Optical Fiber Network dated February 23, 1999.........F-1

Invoice.........G-1

Check to Optical Fiber Network.........H-1

RF/SLC AGM/796

## SECURITY AGREEMENT

This Security Agreement (hereinafter called the "Agreement"), dated for purposes of reference July 6, 1998, is between the undersigned OPTICAL FIBER NETWORK, INC. (hereinafter "CLIENT") with its principal business office, as of this date, located at 429 31st Avenue Court NE, Hickory, NC, 28601 and Riviera Finance, its successors, assigns, affiliates, subsidiaries and related entities, (hereinafter "RIVIERA"). CLIENT and RIVIERA agree as follows:

PURPOSE OF AGREEMENT:

1. Client desires to obtain financing by factoring, selling and assigning to RIVIERA acceptable accounts receivable at a discount below the face value. Such financing is subject to the terms and conditions of the Agreement and is commercial in nature, and not for household, family, and/or personal use.

DEFINITIONS:

2. "ACCOUNT" means any right to payment for goods sold, or leased, and delivered, or service(s) rendered which is not evidenced by an instrument or chattel paper.

3. "ACCEPTABLE ACCOUNT" means an Account conforming to the warranties and terms set forth herein.

4. "CUSTOMER" means CLIENT'S customer or the account debtor.

5. "CLIENT" means the seller and assignor of the Accounts.

6. "COLLATERAL" means the tangible or intangible property given as security to RIVIERA by CLIENT for any obligations and liabilities of CLIENT to RIVIERA under this Agreement including without limitation the property further described in Section 28.

7. "WARRANT" means to guarantee, as a material element of this Agreement. Each separate warranty herein is also an independent condition to RIVIERA'S duties under this Agreement.

8. "CREDIT PROBLEM" means a customer is unable to pay its debts because of insolvency, the dissolution, termination of existence, or business failure of the account debtor, the voluntary filing of a petition of bankruptcy, or the commencement of any proceeding under the Bankruptcy Code or any other bankruptcy or insolvency laws by or against Customer such that payment on the Account is or will be impaired.

9. "CUSTOMER DISPUTE" means a claim by customer against CLIENT of any kind whatsoever that reduces the amount collectible from Customer by RIVIERA. A "Customer Dispute" may arise from any kind of disagreement between Customer and CLIENT whatsoever, valid or invalid, and may arise at anytime, both before and/or after the signing of this Agreement or the purchase of the Account by RIVIERA.

10. "INDEBTEDNESS" means all loans, advances, debts, liabilities, obligations, covenants and duties owing by CLIENT to RIVIERA, direct or indirect, absolute or contingent, due or to become due, and all principal, interest, charges, costs, expenses and fees (including attorneys fees) owing by CLIENT hereunder.

REPRESENTATIONS: WARRANTIES AND COVENANTS BY CLIENT

11. As an inducement for RIVIERA to enter into this Agreement, and with full knowledge that the truth and accuracy of the representations and warranties in this Agreement are being relied upon by RIVIERA in providing the financing hereunder, CLIENT represents, warrants and/or covenants that:

12. CLIENT is properly licensed and authorized to operate the business of service provider to telecom industry under the trade name(s) of OPTICAL FIBER NETWORK, INC. and CLIENT'S trade name(s) has been properly filed and published as required by applicable law. CLIENT has fulfilled all the federal, state and local requirements of law in properly registering itself to do business at all addresses in which it is located.

13. CLIENT'S business is solvent. CLIENT has made and shall continue to make timely payment and or deposits of required taxes, namely employee income tax withholdings for federal and state, sales, use and excise taxes and any and all other required by law. CLIENT will furnish, upon request by RIVIERA, satisfactory proof of payment and/or compliance of any or all taxes required by law.

14. All financial records, statements, books or other documents shown to RIVIERA by CLIENT at anytime, either before or after the signing of this Agreement are true, complete, accurate and represent the true financial condition of CLIENT.

15. CLIENT will not, under any circumstances or in any manner whatsoever, interfere with any of RIVIERA'S rights under this Agreement.

16. CLIENT is, at the time of purchase by RIVIERA, the lawful owner of and has undisputed title to the Accounts purchased by Riviera.

17. Each Customer's business is solvent to the best of CLIENT'S information and knowledge and CLIENT has not received any notice, either verbal or written, of a Credit Problem concerning any of its Customers which Credit Problem has not been disclosed in writing to RIVIERA.

18. CLIENT will maintain such insurance covering CLIENT'S business and/or the property of CLIENT'S customers as is customary for businesses similar to the business of CLIENT and, at the request of RIVIERA, name RIVIERA as loss payee of such insurance.

19. Each Account offered for sale to RIVIERA is an accurate and undisputed statement of indebtedness by Customer to CLIENT as a result of an absolute sale and not on consignment, or on approval, or hold basis, or guaranteed contract or subject to any other contingency and is for a certain sum which is due and payable in thirty days or less, or within such time as is agreed to, in writing by RIVIERA and CLIENT.

20. Each account offered for sale to RIVIERA is an accurate statement of a bonafide sale, delivery and acceptance of merchandise or performance of service by CLIENT to customer.

21. CLIENT does not own, control or exercise dominion over, in any way whatsoever, the business of any Customer/Account debtor to be factored by CLIENT to RIVIERA.

22. CLIENT will not factor or sell Accounts except to RIVIERA for the period of this Agreement, and/or for as long as any indebtedness whatsoever remains owing by CLIENT to RIVIERA.

23. CLIENT has not transferred, pledged or granted a security interest in CLIENT'S Accounts or other personal property to any other party which CLIENT has not fully disclosed in writing to RIVIERA. CLIENT will not transfer, pledge or grant a security interest to any other party in said Accounts or personal property for the term of this Agreement and for as long as CLIENT is indebted to RIVIERA hereunder.

EXHIBIT A

DHM Initials

RF-SEC-AGM/796

24. CLIENT will not change or modify the terms of the original Account with Customer unless RIVIERA first consents to such change in writing. For example, CLIENT may not extend credit to a Customer beyond thirty days or issue, grant or allow discounts, credits, allowances or accept returns without prior written notice to and consent from RIVIERA.

25. CLIENT shall not consent to the placement of any lien, security interest or encumbrance upon CLIENT'S fixtures, personal property of any type and wherever located except upon prior written notice to RIVIERA, and CLIENT shall provide written notice to RIVIERA within ten days of CLIENT obtaining knowledge from any source, of the filing, recording or perfection by any means, of a non-consensual lien, claim or encumbrance against the aforementioned property of CLIENT.

26. CLIENT will notify RIVIERA in writing thirty (30) days prior to any change in the location of CLIENT'S place(s) of business, or if CLIENT. has or intends to acquire any additional place(s) of business, or prior to any change in CLIENT'S chief executive office, the office or offices where CLIENT'S books and records concerning the Accounts are kept.

27. CLIENT will notify RIVIERA in writing thirty (30) days prior to any proposed change of CLIENT'S name, identity, legal entity, corporate structure, use of additional trade names, and/or any proposed change in any of the officers, principals, partners, and/or owners of CLIENT. CLIENT will not sell, lease, transfer or otherwise dispose of all or substantially all of its property or assets, or consolidate with or merge into or with any corporation or entity without thirty (30) day prior full disclosure in writing to RIVIERA.

<u>FURTHER PROMISES</u>

**28. SECURITY INTEREST/COLLATERAL: As a further inducement for RIVIERA to enter into this Agreement, CLIENT gives to RIVIERA, as collateral for the repayment of any and all obligations and liabilities whatsoever of CLIENT to RIVIERA, a security interest, under the Uniform Commercial Code, in the following described property hereinafter collectively called "Collateral": All presently existing or hereafter arising, now owned or hereafter acquired accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, and general intangibles, and all books and records pertaining to accounts and all proceeds of the foregoing property.**

**29. NOTIFICATION: RIVIERA may at any time and at its sole discretion notify any Customer/Account debtor of CLIENT to make payments directly to RIVIERA.**

**30. ASSIGNMENT: CLIENT shall from time to time at its option sell, transfer and assign Accounts to RIVIERA. Said Accounts shall be identified by separate and subsequent written assignments on a form to be provided to CLIENT by RIVIERA known as Schedule of Accounts.**

**31. REQUIRED FORMS: When CLIENT offers a Schedule of Accounts to RIVIERA for sale, RIVIERA shall receive an original invoice together with one copy thereof, and any supporting documentation required for payment by Customer, including but not limited to a copy of the Bill of Lading, Proof of Delivery, Contract or Purchase Order, and/or a Purchase Order number which corresponds with such invoice(s), as appropriate to the business of CLIENT, together with one copy thereof.**

**32. APPROVAL: RIVIERA will not purchase an Account unless such Account is first submitted to RIVIERA by CLIENT for approval. RIVIERA is not obligated to buy any Account from CLIENT. RIVIERA shall have no liability to CLIENT or any of CLIENT'S Customers for RIVIERA'S failure or refusal to purchase an Account.**

**33. DISCOUNT: RIVIERA agrees to buy Acceptable Accounts from CLIENT that have been approved for purchase from CLIENT at a discount (fee) of <u>nine</u> percent (<u>9.0</u>%) from the face value of each Account.**

**34. MAXIMUM ACCOUNT: The outstanding amount of CLIENT'S Account with RIVIERA (that is Accounts purchased by RIVIERA from CLIENT and not yet paid by Customer) shall not exceed at any time the sum of $<u>300,000.00</u>.**

**35. CHARGES: RIVIERA will deduct from each appropriate Schedule of Accounts of CLIENT, RIVIERA'S standard wire transfer fee on all wire transfers and same-day or overnight courier service charges if used by CLIENT.**

**36. RESERVE: In addition to the discount referred to in Paragraph 33 above, RIVIERA will reserve and withhold an amount in a reserve account equal to <u>twenty one</u> percent (<u>21.0</u>%) of the gross face amount of all Accounts purchased. Said reserve account may be held by RIVIERA and applied by RIVIERA against charge-backs or any obligations of CLIENT to RIVIERA, known or anticipated, and said reserve account is not due and payable to CLIENT until any and all such obligations are fully paid and/or satisfied. CLIENT gives to RIVIERA a security interest in this reserve account which secures all obligations and indebtedness arising hereunder. The reserve shall be a book balance maintained on the records of RIVIERA and shall not be a segregated fund.**

**37. RESERVE ACCOUNT REFUND: RIVIERA will return to CLIENT from the reserve account <u>twenty one</u> percent (<u>21.0</u>%) of the gross purchase price of any individual Account subject to Paragraph 36 above, when said Account is paid in full and there is no other outstanding indebtedness of CLIENT to RIVIERA known or anticipated. Refunds to be made within the first three working days of the new month, unless otherwise agreed to by RIVIERA in an addendum to this Agreement.**

**38. REBATES: As an inducement to CLIENT to sell only the Accounts from which prompt payments can be expected directly from Customer, RIVIERA agrees to return to CLIENT a rebate as a percentage of the discount charged. Such rebates will result in the net discounts listed on Addendum #1 which is attached to and a part of this Agreement. Any rebate money owing to CLIENT may be retained by RIVIERA at RIVIERA'S sole discretion as further security for payment of any and all obligations and indebtedness owing by CLIENT.**

39. NO RECOURSE: RIVIERA will have no recourse against CLIENT when an account is not paid by Customer when due, if the reason for non-payment is a Credit Problem (See paragraph 8) except as enumerated below:

40. EXCEPTIONS: Paragraph 39 will not apply and RIVIERA will have recourse against CLIENT for unpaid accounts in the following situations:

(a) if CLIENT has breached any warranties, representations, covenants, or promises in this Agreement with regard to the unpaid Account.

(b) if CLIENT has contributed to, or aggravated Customer's Credit Problem.

(c) if CLIENT and Customer are involved in a dispute of any kind, regardless of validity.

(d) if Customer asserts a claim of loss or offset of any kind against CLIENT or RIVIERA.

(e) if (an) original invoice(s) has (have)been sent to customer. *by CLIENT*, and not by RIVIERA, RIVIERA will have recourse against CLIENT if such invoice(s) is (are) not paid to RIVIERA within <u>45</u> days from date of purchase by RIVIERA.

41. NOTICE OF DISPUTE: CLIENT will immediately notify RIVIERA of any disputes between Customer and Client.

42. PAYMENT OF DISPUTED ACCOUNT: CLIENT will immediately pay to RIVIERA the full amount of any Account subject to a Customer Dispute (See Paragraph 9) of any kind whatsoever.



Initials

43. **SETTLEMENT OF DISPUTE:** RIVIERA may, but is not obligated to, settle or compromise any dispute with Customer. Such settlement or compromise does not relieve CLIENT of final responsibility for such Accounts.
44. **CHARGE-BACK:** If CLIENT does not fully settle the dispute with immediacy (within 24 hours), RIVIERA may, in addition to any other remedies under this Agreement, charge-back or sell back the Account to CLIENT, subject however to RIVIERA'S security interest therein.
45. **CHARGE-BACK FOR INVOICING ERROR:** Mistaken, incorrect and/or erroneous invoicing, submitted by CLIENT to RIVIERA may, at RIVIERA'S discretion be deemed a disputed invoice and be charged-back to CLIENT.
46. **STATEMENT OF CHARGE-BACK:** RIVIERA shall identify in writing all charge-backs when taken and provide to CLIENT a written statement thereof. Said statement shall be deemed an "ACCOUNT STATED" between CLIENT and RIVIERA.
47. **SOLE PROPERTY:** Once RIVIERA has purchased an Account, the Account and the payment from Customer as to that Account is the sole and exclusive property of RIVIERA. Any interference by CLIENT with this Account or payment will result in civil and/or criminal liability.
48. **HOLD IN TRUST:** CLIENT will hold in trust and safekeeping, as the property of RIVIERA, and immediately turn over to RIVIERA the identical check or other form of payment received by CLIENT, whenever any payment on an Account purchased by RIVIERA comes into CLIENT'S possession. Should CLIENT come into possession of a check or other form of payment comprising payments owing to both CLIENT and RIVIERA, CLIENT shall turn over said check or other form of payment to RIVIERA. RIVIERA will refund CLIENT'S portion to CLIENT subject to any indebtedness due for which payment has not been arranged.
49. **DOUBLE PAYMENTS:** Should RIVIERA receive a double payment on an Account or other payment which is not identified, RIVIERA shall carry these sums as open items and shall return them directly to said Payor upon proper identification.
50. **FINANCIAL RECORDS:** CLIENT will furnish RIVIERA financial statements and information as requested by RIVIERA from time to time.
51. **NOTICE OF LEVY:** CLIENT will promptly notify RIVIERA of any attachment, tax assessment or other legal process levied against CLIENT or any of CLIENT'S customers.
52. **NO PLEDGE:** CLIENT will not pledge the credit of RIVIERA to any person or business for any purpose whatsoever.
53. **BOOK ENTRY:** CLIENT will immediately upon sale of Accounts to RIVIERA, make proper entries on its books and records disclosing the absolute sale of said ACCOUNTS to RIVIERA.
54. **LEGAL FEES:** Except as is prohibited by law, CLIENT shall pay to RIVIERA all costs and expenses including without limitation attorneys fees and costs incurred by RIVIERA in the negotiation, preparation and execution of this Agreement and any documents related thereto and in the prosecution or enforcement of any of RIVIERA'S rights, claims or causes of action which arise out of, relate to or pertain to this Agreement and the Indebtedness, including all attorney's fees, interest and other costs and expenses incurred in connection with any bankruptcy or insolvency proceeding involving CLIENT. Such costs and expenses and attorney's fees incurred shall be paid on demand by CLIENT after notice by RIVIERA.
55. **POWER OF ATTORNEY:** In order to carry out this Agreement, CLIENT irrevocably appoints RIVIERA or any person designated by RIVIERA, its special attorney in fact, or agent, with power to:
(a) notify Customers that CLIENT'S Accounts have been assigned to RIVIERA and that RIVIERA has a security interest therein:
(b) direct CLIENT'S Customers to make payment of all Accounts direct to RIVIERA and forward invoices directly to such Customers:
(c) Strike out CLIENT'S address on all Accounts mailed to Customers and put RIVIERA'S address on all Accounts:
(d) receive, open and dispose of all mail addressed to CLIENT, including CLIENT'S fictitious trade name via RIVIERA'S address:
(e) endorse the name of CLIENT including CLIENT'S fictitious trade name on any checks or other evidences of payment that may come into the possession of RIVIERA on Accounts purchased by RIVIERA or pursuant to default on any other documents relating to any of the Accounts or to Collateral:
(f) in CLIENT'S name, or otherwise, demand, sue for, collect, and give releases for any and all monies due or to become due on Accounts:
(g) compromise, prosecute, or defend any action, claim or proceeding as to said Accounts:
(h) from time to time offer trade discounts to CLIENT'S customer exclusive of CLIENT'S normal business custom with said Customer:
(i) do any and all things necessary and proper to carry out the purpose intended by this Agreement and to protect CLIENT'S and RIVIERA'S interest in the Accounts or other Collateral.

The authority granted RIVIERA shall remain in full force and effect until all assigned Accounts are paid in full and any indebtedness of CLIENT to RIVIERA is discharged. This power, coupled with a security interest, is irrevocable.
56. **HOLD HARMLESS:** CLIENT shall hold RIVIERA harmless against any Customer ill will arising from RIVIERA'S collecting or attempting to collect any Accounts.
57. **DEFAULTS:** Any one or more of the following shall be a default hereunder any or all of which may cause the cessation of purchasing by RIVIERA:
(a) CLIENT shall fail to pay an indebtedness to RIVIERA when due.
(b) CLIENT shall breach any term, provision, covenant, warranty or representation under this Agreement, or any representation, warranty, report or other statement made by or on behalf of CLIENT contained in this Agreement including but not limited to financial statements, schedules, Schedules of Accounts, Required Forms, borrowing certificates or other statements furnished by Client or in any other agreements, contracts between CLIENT and RIVIERA or obligation of CLIENT to RIVIERA, shall be false, erroneous or misleading in any respect.
(c) the appointment of any receiver or trustee of all or a substantial portion of the assets of CLIENT.
(d) CLIENT shall become insolvent or unable to pay debts as they mature, shall make a general assignment for the benefit of creditors, is subject to the appointment of a receiver to operate its business, or shall voluntarily file under any bankruptcy or similar law.
(e) Any involuntary petition in bankruptcy shall be filed against CLIENT and shall not be dismissed within 60 days.
(f) Any judgment, levies of attachment, executions, tax assessments or similar process shall be issued against CLIENT or any of the Collateral and shall not be released satisfactorily within ten days.
(g) CLIENT shall terminate/cease factoring while RIVIERA has factored Accounts outstanding, the collectibility of which, in whole or in part, is uncertain.
(h) CLIENT, without prior notice or disclosure to RIVIERA, terminates, discontinues or suspends the operations of its business.
58. **REMEDIES AFTER DEFAULT:** In the event of any default RIVIERA may do any one or more of the following without notice or demand to CLIENT except as expressly required under this Agreement:
(a) Declare any and all indebtedness including outstanding factored Accounts immediately due and payable in full.
(b) Notify any Customers and take possession of Collateral and collect any Accounts without judicial process.
(c) Require CLIENT to assemble the Collateral and the records pertaining to Accounts and make them available to RIVIERA at a place designated by RIVIERA.



Initials

SEC AGM/796

l) Take control in any manner of any reclaimed, rejected, returned, replevined, stopped in transit or redeposited goods relating to any account.

e) Enter the premises of CLIENT and take possession of the Collateral and of the records pertaining to the Accounts and any other collateral.

f) Exercise all or any of the rights and remedies of a secured party under the Uniform Commercial Code or as a creditor under any other applicable law or at equity.

g) Grant extensions, compromise claims and settle Accounts for less than face value, without prior notice to CLIENT.

h) Use, in connection with any assembly or disposition of the Collateral, any trademark, trade name, trade style, copyright, patent right or technical process used or utilized by CLIENT.

i) Return any surplus realized to CLIENT after deducting the reasonable expenses, and attorneys fees incurred by RIVIERA in resolving said default.

j) Hold CLIENT liable for any deficiency

k) RIVIERA shall not be required or be under any obligation to marshall any assets in favor of CLIENT or any guarantor or any other party.

l) Charge interest on any indebtedness outstanding at the highest rate permissible by law, which interest shall become part of and added to the indebtedness.

59. **TERMINATION:** This Agreement shall continue in full force and effect until terminated by certified written notice by either party.

60. **POST TERMINATION:** After termination CLIENT shall be liable to RIVIERA for the full and prompt payment of the full amount of factored Accounts which are then outstanding and unpaid, disputed or undisputed, as well as any other indebtedness due RIVIERA. RIVIERA continues to have a security interest in the Collateral of CLIENT until all indebtedness of CLIENT to RIVIERA is paid in full.

61. **BINDING ON FUTURE PARTIES:** This Agreement inures to the benefit of and is binding upon the heirs, executors, administrators, successors and assigns of the parties thereto and may not be assigned by CLIENT without RIVIERA'S prior written consent.

62. **CUMULATIVE RIGHTS:** All rights, remedies and powers granted to RIVIERA in this Agreement, or in any note or other agreement given by CLIENT to RIVIERA, are cumulative and may be exercised singularly or concurrently with such other rights as RIVIERA may have. These rights may be exercised from time to time as to all or any part of the pledged Collateral as RIVIERA in its discretion may determine.

63. **STATE LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

64. **JURISDICTION/WAIVER OF JURY TRIAL:** Client hereby consents to the exclusive jurisdiction of the local, state or federal court located within the State of Georgia. CLIENT hereby unconditionally waives its right to a jury trial in any suit or proceeding arising under or relating to this Agreement. Agreed to DMM initial

65. **INVALID PROVISIONS:** If any provision of this Agreement shall be declared illegal or contrary to law, it is agreed that such provision shall be disregarded and this Agreement shall continue in force as though such provision had not been incorporated herein.

66. **ENTIRE AGREEMENT:** This instrument contains the entire Agreement between the parties. Any addendum or modification hereto will be signed by both parties and attached hereto.

67. **EFFECTIVE:** This Agreement becomes effective when it is accepted and executed by an authorized representative of RIVIERA.

68. **INDEMNIFICATION:** Client agrees to indemnify and hold RIVIERA harmless from any and all liability, obligations, claims, losses, damages, actions and suits, including counsel fees, costs of suit and interest which RIVIERA may incur as a result of the failure of the CLIENT to pay withholding taxes due and payable to any taxing authority or in any way relating to or resulting from this Agreement.

Executed and accepted this 7 day of July 1998 (Month/Year), at Hickory, N.C (City/State)

OPTICAL FIBER NETWORK, INC.
CLIENT'S NAME

By [signature]
Signature

David Middleton, President
Name and Title

By [signature]
Signature

DAVID Middleton ~~John Hodges~~, Secretary
Name and Title

By ______
Signature

______
Name and Title

Sworn and subscribed before me this ______ day of ______, 19___

______
NOTARY PUBLIC

CLIENT'S signatures witnessed by:

By [signature]
Signature

BARRY SPENCER BOM
Name and Title

Accepted this 6th day of August, 1998

at Atlanta GA
City and State

RIVIERA FINANCE

By [signature]
Signature

Alba M. Gaudet, Manager
Name and Title

This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.

No. of Additional Sheets Presented: 1

(1) Debtor(s) (Last Name First) and Address(es):
(Please Type)

OPTICAL FIBER NETWORK, INC.
429 31st Avenue Court Northeast
Hickory, NC 28601
FEIN# 56-1873275

(2) Secured Party(ies) (Name(s) and Address(es):

Riviera-East, Inc. dba Riviera Finance
3520 Piedmont Road, Northeast
Suite 100
Atlanta, GA 30305

1998005629 9

(3) (a) Collateral is or includes fixtures.
(b) Timber, Minerals or Accounts Subject to G.S. 25-9-103(5) are covered
(c) Crops Are Growing Or To Be Grown *
On Real Property Described In Section (5).
If either block 3(a) or block 3(b) applies describe real estate, including record owner(s) in section (5).

(4) Assignee(s) of Secured Party, Address(es):

For Filing Officer

(5) This Financing Statement Covers the Following types (or items) of property.
See Attached Exhibit A

X Products of the Collateral Are Also Covered.

* On Farm Collateral Filing, Name County Debtor Resides in
(Cannot be Filed unless County is named.)

FILED
98 AUG 14 AM 11:44
ELAINE F. MARSHALL
SECRETARY OF STATE
NORTH CAROLINA

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above. (A Termination Statement signed by a person other than the secured party of record must include or be accompanied by the assignment or a statement by the secured party of record that he has assigned the security interest to the signer of the Termination Statement.)

Date ____________________ 19 ____

By ____________________
(Signature of Secured Party or Assignee)

Revised 11-90

(3) Filing Officer Copy - Acknowledgement. Filing Officer is requested to note file number, date and hour of filing on this copy and return to person filing, as an Acknowledgement.

Printed by UCC Control - LibraSoft, Inc.
229 Johnson St., Suite C, Santa Fe, NM 87501

UCC-1

EXHIBIT
B

B-1

This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.

No. of Additional Sheets Presented: 1

**98-2174**

FILED AUGUST 14, 1998 1:41 PM
Register of Deeds
CATAWBA COUNTY, NC

(1) Debtor(s) (Last Name First) and Address(es): (Please Type)

OPTICAL FIBER NETWORK, INC.
429 31st Avenue Court Northeast
Hickory, NC 28601
FEIN# 56-1873275

(2) Secured Party(ies) (Name(s) and Address(es):

Riviera-East, Inc. dba Riviera Finance
3520 Piedmont Road, Northeast
Suite 100
Atlanta, GA 30305

(3) (a) Collateral is or includes fixtures.
(b) Timber, Minerals or Accounts Subject to G.S. 25-9-103(5) are covered
(c) Crops Are Growing Or To Be Grown * On Real Property Described In Section (5).
If either block 3(a) or block 3(b) applies describe real estate, including record owner(s) in section (5).

(4) Assignee(s) of Secured Party, Address(es):

For Filing Officer

(5) This Financing Statement Covers the Following types [or items] of property.

See Attached Exhibit A

**AFTER RECORDING RETURN TO**
UCC FILING & SEARCH SERVICES, Inc.
Post Office Box 11250
Tallahassee, Florida 32302-3250

683327

* On Farm Collateral Filing, Name County Debtor Resides in (Cannot be Filed unless County is named.)

☒ Products of the Collateral Are Also Covered.

(6) Signatures: Debtor(s)

OPTICAL FIBER NETWORK, INC.
David Middleton, President

(By)

Standard Form Approved by N.C. Sec. of State

Revised 11-90

(4) Secured Party Copy. Remove this copy and forward balance of form intact for filing.

Secured Party(ies) [or Assignees]

Riviera-East, Inc. dba Riviera Finance Alba M. Gaudet, Manager

(By)

Signature of Secured Party Permitted in Lieu of Debtor's Signature:
(1) Collateral is subject to Security Interest In Another Jurisdiction and [X]
☐ Collateral Is Brought Into This State
☐ Debtor's Location Changed To This State
(2) For Other Situations See: G.S. 25-9-402 (2)

Printed by UCC Control - LibraSoft, Inc.
229 Johnson St., Suite C, Santa Fe, NM 87501

UCC-1

11/29/2001 10:44 FAX 7043425264 POYNER AND SPRUILL 002

MAR-04-1999 03:20 AM P.02

**ORDER FOR SUPPLIES OR SERVICES** (Contractor must submit four copies of invoice.)

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0187), Washington, DC 20503.

**PLEASE DO NOT RETURN YOUR FORM TO EITHER OF THESE ADDRESSES. SEND YOUR COMPLETED FORM TO THE PROCUREMENT OFFICIAL IDENTIFIED IN ITEM 6.**

| 1. CONTRACT/PURCH ORDER NO. | 2. DELIVERY ORDER NO. | 3. DATE OF ORDER (YYMMDD) | 4. REQUISITION/PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| SP310099M7045 | | 99 FEB 02 | 90223006 | |

6. ISSUED BY CODE SP3100
DEFENSE DISTRIBUTION CENTER
PROCUREMENT OFFICE
DDC-AA BLDG 2001 2ND FL
NEW CUMBERLAND PA 17070-5001

7. ADMINISTERED BY (If other than 6) CODE

8. DELIVERY FOB: [X] DEST [ ] OTHER (See Schedule if other)

9. CONTRACTOR CODE 00908 FACILITY CODE
NAME AND ADDRESS:
OPTICAL FIBER NETWORK INC
429 31ST AVENENUE COURT NE
HICKORY NC 28601

10. DELIVER TO FOB POINT BY (Date) (YYMMDD): 99 FEB 12

11. MARK IF BUSINESS IS: [X] SMALL [ ] SMALL DISADVANTAGED [ ] WOMEN-OWNED

12. DISCOUNT TERMS: NET 30 DAYS

13. MAIL INVOICES TO: SEE BLOCK 15

14. SHIP TO SP310099M7045 CODE SB3211
BILL OF MATERIAL BRANCH
ATTN: DDJC-SSM <SB3211>
BLDG 205 SECTION 6
LATHROP CA 95330-5000

15. PAYMENT WILL BE MADE BY CODE S33181
DEF FINANCE & ACCT SERVICE
ATTN: DFAS-CO-LCO
P O BOX 369016
COLUMBUS OH 43236-9016

MARK ALL PACKAGES AND PAPERS WITH CONTRACT OR ORDER NUMBER

16. TYPE OF ORDER: DELIVER — This delivery order is issued on another Government agency or in accordance with and subject to terms and conditions of above-numbered contract.
PURCHASE — Reference your [illegible] furnish the following on terms specified herein.
ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

NAME OF CONTRACTOR — SIGNATURE — TYPED NAME AND TITLE — DATE SIGNED (YYMMDD)

[ ] If this box is marked, supplier must sign Acceptance and return the following number of copies:

17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE
01 97X4930.5BE0 00193 P300 26 S33181. 43175.00

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| 0001 | DOCUMENT NOUN NSN/MFG-PART-NUM ACQ<br>90223006 CABLE 614500J114070 -01<br>CABLE, FIBER OPTIC, INDOOR/OUDOOR<br>USE, OPTICAL CABLE P/N<br>GX24-125K-SYMC/YMD-900-OFNP <SINGLE<br>MODE>, 1, 500 FT PER REEL<br><br>VARIATION IN QUANTITY <APR 1984> FAR<br>52.212-9:<br>THE PERMISSABLE VARIATION UNDER THE<br>CLAUSE OF THE GENERAL PROVISIONS | 27500 | FT | 1.57000 | 43175.00 |

* If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

24. UNITED STATES OF AMERICA
BY: MICHAEL DELCIMA CONTRACTING/ORDERING OFFICER

25. TOTAL 43175.00
29. DIFFERENCES

26. QUANTITY IN COLUMN 20 HAS BEEN [ ] INSPECTED [ ] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

27. SHIP. NO. [ ] PARTIAL [ ] FINAL
28. D.O. VOUCHER NO.
30. INITIALS
32. PAID BY
33. AMOUNT VERIFIED CORRECT FOR
[ ] COMPLETE [ ] PARTIAL [ ] FINAL
34. CHECK NUMBER
36. I certify this account is correct and proper for payment.
37. RECEIVED AT
38. RECEIVED BY
39. DATE RECEIVED (YYMMDD)
40. TOTAL CONTAINERS
41. S/R ACCOUNT NUMBER
42. S/R VOUCHER NO.

PREVIOUS EDITION MAY BE USED.

EXHIBIT
C

**continuation sheet**

| REFERENCE NO. OF DOCUMENT BEING CONTINUED | PAGE | OF | PAGES |
|---|---|---|---|
| SP310099M7045 | 2 | | |

NAME OF OFFEROR OR CONTRACTOR: OPTICAL FIBER NETWORK INC

| ITEM NO. | SUPPLIES / SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| CLIN | ACC DOCUMENT MOUN NSN/MFG-PART-NUM<br>ENTITLED "VARIATION IN QUANTITY" SHALL BE LIMITED TO: INCREASE 10.000 %. DECREASE 10.000 %. THIS INCREASE OR DECREASE SHALL APPLY TO TOTAL QUANTITY OF EACH ITEM.<br><br>Ref: Quote by David Middleton, 828/322-7909 <FAX 7809> Ronnie Payad, 209/982-2421. ** AWARD IS BASED ON DELIVERY ARRIVAL DATE OF NO LATER 12 FEB 99. YOUR PROPOSAL DISPLACED SOME VENDORS WHO HAVE QUOTED A LONGER DELIVERY DATE.<br><br>FAR 52.213-4 TERMS AND CONDITIONS -- SIMPLIFIED ACQUISITIONS <OTHER THAN COMMERCIAL ITEMS> <FEB 1998><br>This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at these addresses:<br>http://www.arnet.gov/far/<br>http://www.dtic.mil/contracts/<br><br>Inquiries or request for Status for SUPPLIES Orders should be directed to 209/982-2438 OR 982-2412.<br>Inquiries or request for status for JOB SERVICES Orders may be directed to 982-2421<br><br>All fax inquiries should be directed to 209/982-2450.<br><br>Submit invoices to the address shown in Block 15 of DD Form 1155 in Original and 3 copies.<br><br>ANY BILLING QUESTIONS SHOULD BE DIRECTED TO DFAS-COLUMBUS CENTER, 800/453-9381 OR 614/693-1060/1081 OR VIA FAX 614/693-1048/49. | | | | |

**continuation sheet** P

REFERENCE NO. OF DOCUMENT BEING CONTINUED: SP3100099M7045 | PAGE 3

NAME OF OFFEROR OR CONTRACTOR: OPTICAL FIBER NETWORK INC

| ITEM NO. | SUPPLIES / SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| CLIN | ACC DOCUMENT NOUN NSN/MPC-PART-NUM | | | | |
| | Invoice should show the Order Number contained in block 1 and/or 2 of DD Form 1155 and the applicable document numbers in Block 10, Schedule of Supplies or Services.<br><br>** RECEIVING DOCK HOURS: 7:00 AM - 2:30 PM LOCAL TIME, MONDAY THRU FRIDAY <CLOSED ON SAT. SUN. & FED. HOLIDAYS>.<br>*** CALL <209> 982-3621 OR FAX <209> 982-3620 FOR DIRECTIONS OR ANY RECEIVING QUESTIONS. | | | | |
| REMIT | TO ADDRESS<br>AND VENDOR ADDRESS SAME | | | | |
| | Wayne Darlington<br><br>209.982-3908<br>Sherri | | | | |

# Schedule of Accounts

Client No. C531

This is to certify that the parties named below are indebted to the undersigned in the sums set opposite their respective names, for merchandise sold and delivered or for work and labor done and accepted.

| RIVIERA USE ONLY | DEBTOR'S NAME | DATE | INV. NO. | REF. OR P.O. NO. | INVOICE AMOUNT |
|---|---|---|---|---|---|
| | Defense Finance + Acct Svc. | 2/17 | 7045 | | 44,745.00 ✓ |

99ck 145749

DO NOT WRITE IN THIS BOX - RIVIERA USE ONLY

CHECK NO. 145747

CHECK DATE 3/5/99

MAIL ☐ DEP. ☐ PICK-UP ☐

WIRE ☐ F.E. ☒ OTHER ☐

PREP. BY [illegible]

(99) ck pyble & fed ex to
Unicom attn: Don Freeman 21%
6665 Jimmy Carter Blvd
Norcross GA 30071

| | |
|---|---|
| TOTAL | 44,745.00 |
| FEE 9 % | -4027.05 |
| CHARGE BACKS | |
| RESERVE | -9396.45 |
| FEE REBATE | |
| RESERVE REBATE (+) | 6881.00 |
| OTHER # 99 | -38,190.00 |
| OTHER # 65 | -12.50 |
| CASH PAYMENT | 0 |

EXHIBIT D

[For v]aluable consideration, receipt of which is hereby acknowledged, the undersigned hereby sells, [tran]sfers to RIVIERA FINANCE, its successors or assigns, all its right, title [in the] accounts above named, including all monies due or to become due [w]ith and pursuant to that certain Factoring Agreement now existing by [...]ed and RIVIERA FINANCE, the conditions, representative, warranties, [...]are made part of this sale and assignments and incorporated herein

D-1

See attached

# RIVIERA FINANCE

February 17, 1999

Defense Finance & Acct. Service
ATTN DFAS-C0-LC0
P O Box 369016
Columbus, OH 43236

RE: **Confirmation of Payment on** **<u>Optical Fiber Network Inc.</u>** **(hereinafter "CLIENT") Invoices Assigned to Riviera Finance.**

Dear Sirs,

CLIENT has requested that Riviera Finance provide an Accounts Receivable Factoring program that would involve funding based on the invoice(s) due from your company. Riviera Finance requires confirmation regarding the payment of specific invoices for services performed and/or goods delivered by CLIENT. Attached is a *Notification Agreement* signed by both CLIENT and Riviera which adheres to the guidelines of the Uniform Commercial Code and serves as a formal notification that invoices of CLIENT have been assigned to Riviera. Accordingly, it is Riviera's right, as assignee, to receive all payment on the invoices listed below and on all future invoices of CLIENT.

The following invoice(s) has/have been submitted to Riviera for consideration. Please confirm all information set forth below:

| Invoice # | Invoice Date | Invoice Amount | Received/ ~~Inspected/~~ Approved | To Be Paid In Full W/O Offset |
|---|---|---|---|---|
| 7045 | 2/17/99 | $44,745.00 | 2/19/99 | [initials] |

Payment terms on invoice(s) listed above Net 30 days.
*The above is without any offsets, claims or credits which may reduce the amount due.*

Page 1 of 2
Confirmation

EXHIBIT
E

3520 Piedmont Road, N.E. Suite 100, Atlanta, Georgia 30305
404/237-2286 800/334-2092 FAX 404/237-8723

Riviera appreciates you taking the time to verify this information. Riviera Finance is basing its purchasing on the written assurances that you provide on behalf of Defense Finance & Acct. Service hereinafter ("Account Debtor").

The undersigned agrees not to assert against Riviera Finance any claim or defense which Account Debtor may have against CLIENT.

The undersigned acknowledges that he/she has the authority to sign this statement on behalf of the Account Debtor.

Defense Finance & Acct. Service

Sylvia Garcia
Name

Supply Tech BOM Section
Title

3-2-99
Date

*Invoices and any prior notification attached hereto.*

Page 2 of 2
Confirmation

Optical Fiber Network Inc.(OFNi)

429 31st Ave. Court NE
Hickory, NC 28601

828.322.7909
828.322.7809 fax

# NOTICE OF ASSIGNMENT

Defense Finance & Acct Service
ATT DFAS-CO-LCO
PO Box 369016
Columbus, OH 43236

Date 2-17-99

In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of RIVIERA FINANCE as a source of capital funding. The availability of this service will enable us to serve our customers in a more efficient manner. Therefore, we wish to inform you that payments on all invoices from OPTICAL FIBER NETWORK, INC. should be made **PAYABLE TO AND MAILED DIRECTLY TO:**

RIVIERA FINANCE
Assignee for OPTICAL FIBER NETWORK, INC.
P. O. BOX 200253
DALLAS, TX 75320-0253

This assignment has been duly recorded under applicable state and local statutes and under the Uniform Commercial Code. Please make the proper notations on your ledger and acknowledge the receipt of this letter by signing one copy at the bottom of this page and returning it to RIVIERA FINANCE.

If there are any questions concerning your billing, please call RIVIERA FINANCE at (800) 334-2092 or Fax to (404) 237-8723.

This notice and instruction remains in full force and effect until you are again notified by both the undersigned and RIVIERA FINANCE in writing to the contrary.

Sincerely,

Riviera Finance

Alba M. Gaudet

Alba M. Gaudet, Manager

OPTICAL FIBER NETWORK, INC.

David Middleton, President

P.S. Please sign one copy and mail to RIVIERA FINANCE in the enclosed business reply envelope. Thank you.

ACKNOWLEDGED BY ______________________

TITLE ______________________

COMPANY NAME ______________________

RIVIERA FINANCE Federal ID# 75-2513281, is not subject to backup withholding.

OFNi

OFNI
PO Box 2162
Hickory, NC
28603-2162

Phone: 828.322.7909
Fax: 828.322.7809
E-mail: jcampbell@ofni.com

Tuesday, February 23, 1999

5th Logistic Agency
Defense Distribution Center(West) Contracting
Attention: Ronnie Payad
PO Box 960001
Bldg. S-4, Code DDSCW-PA
Stockton, CA 95296-0800

Dear Mr. Payad,

This letter is in reference to Optical Fiber Network's award of contract number (order number) SP310099M7405. OFNi would like to amend the contract, to show that the recipient of funds for services rendered be addressed to Riviera Finance (OFNi's finance company). The company's address is 3520 Piedmont Road NE, Suite 100, Atlanta GA 30305.

OFNi also gives Defense Distribution Center (West) Contracting, permission to answer all questions and to comply with all request Riviera may deem necessary concerning the above contract/order number.

If you have any questions please contact James E. Campbell Jr. at 828.322.7909. Thank you.

Sincerely,

David L. Middleton

David L. Middleton

EXHIBIT
tabbies
F

11/29/2001 10:46 FAX 7043425264 POYNER AND SPRUILL 008

Amy RivieraJames E. Campbell Jr. From: James E. Campbell Jr 828.322.7809 3/3/99 11:35:48 Page 1 of 1
mes E. Campbell Jr
FEB-26-1999 11:33 P.01

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT** | 1. CONTRACT ID CODE | PAGE 1 OF PAGES 1

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00001 | 99 FEB 24 | CONSOLIDATION | |

6. ISSUED BY CODE SP3100

DEFENSE DISTRIBUTION CENTER
PROCUREMENT OFFICE
DDC-AA BLDG 2001 2ND FL
NEW CUMBERLAND PA 17070-5001

7. ADMINISTERED BY (If other than Item 6) CODE

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

OPTICAL FIBER NETWORK INC
429 31ST AVENENUE COURT NE
HICKORY NC 28601

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

(X) 10A. MODIFICATION OF CONTRACT/ORDER NO.
SP3100099M7045

10B. DATED (SEE ITEM 13)
99 FEB 02

CODE 009U8 FACILITY CODE

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER (Specify type of modification and authority)
**DFARS 212.503 (d) (i) (B)**

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The Remit to Address is changed to
the following:
RIVIERA FINANCE ~~<OFNI FINANCE~~ MWD
MWD ~~COMPANY>~~, 3520 PIEDMONT ROAD NE.
SUITE 100, ATLANTA, GA 30305

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF SIGNER (Type or print) | |
|---|---|---|---|
| | | MICHAEL DELCIMA | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | BY [signature] (Signature of Contracting Officer) | 26 FEB 99 |

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

3/5/99

# Optical Fiber Network Inc.(OFNi)

# INVOICE

[redacted]

828.322.7909
fax: 828.322.7809

| | |
|---|---|
| SOLD TO: | Defense Finance & Acct. Service<br>ATTN: DFAS-CO-LCO<br>P O BOX 369016<br>COLUMBUS, OH 43236-9016 |

SHIPPED TO:
Bill of Material Branch
Attention: DDJC-SSM <SB3211>
Bldg. 205 Section 6 209.982.3961
Lathrop, CA 95330-5000 209.982.3620 FAX

| | |
|---|---|
| INVOICE NUMBER | 7045 |
| INVOICE DATE | |
| OUR ORDER NUMBER | SP310099M7045 |
| YOUR ORDER NUMBER | SP310099M7045 |
| TERMS | 1% net 10 days |
| SALES REP | David L. Middleton |
| SHIPPED VIA | |
| F.O.B. | Destination |
| PREPAID or COLLECT | Collect |

| QUANTITY | [illegible] | [illegible] | [illegible] |
|---|---|---|---|
| 28,500 | Optical Cable P/N: GX2-125k-SYMC/YMD-900-OFNP<br>single mode(1500' per reel) | 1.57 | $44,745.00 |
| | | SUBTOTAL | 44,745.00 |
| | | TAX | |
| | | FREIGHT | |
| | | | $44,745.00<br>PAY THIS AMOUNT |

THIS INVOICE HAS BEEN ASSIGNED TO AND MUST BE PAID DIRECTLY TO
RIVIERA FINANCE
P.O. BOX 200253
DALLAS, TEXAS 75320-0253
ANY CLAIM OR OFFSET MUST BE REPORTED IMMEDIATELY TO
(404) 237-2286
OR
(800) 334-2092

or

Questions concerning this invoice?
Call: David L. Middleton
828.322.7909

**MAKE ALL CHECKS PAYABLE TO:**
Riviera Finance
3520 Piedmont Road, NE Suite 100
Atlanta, GA 30305

***THANK YOU FOR YOUR BUSINESS!***

EXHIBIT
G

G-1
PAYAD.WK4




E913800010063334

EXHIBIT

H-1