IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RIVIERA FINANCE OF TEXAS, INC., Plaintiff, | ) | |
| v. | ) | No. 02-737C (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, Riviera Finance of Texas ("Riviera"), failed to comply with the specific requirements of the Anti-Assignment Acts. Accordingly, its claim to the proceeds of the contract must fail.

I. Riviera and Optical Fiber Did Not Provide A Copy Of The Assignment Instrument To The Contracting Officer Or The Disbursing Officer

To perfect the assignment of a contract's proceeds, the contractor must provide both the contracting officer and the disbursing officer copies of the assignment instrument duly executed by the parties. 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 15(b)(3); 48 C.F.R. 32.802(e). In this case, a copy of the assignment instrument was not sent to either the contracting officer or the disbursing officer.

In plaintiff's complaint and proposed finding of uncontroverted facts, Riviera does not assert that the assignment instrument was provided to the Government. However, in plaintiff's response to defendant's proposed findings of uncontroverted facts, plaintiff alleges that the notification of assignment letter sent to the contracting officer served as the assignment

instrument itself. App. 5-7.[1] The plaintiff does not explain how a letter entitled "Notice of Assignment" addressed to the disbursing officer but delivered to the contracting officer can serve as the assignment instrument. The assignment instrument is the contract between the contractor and the financial institution detailing the financing agreement agreed to by the parties. The "Notice of Assignment" document, cited by the plaintiff, is exactly that–it is a notice to the contracting officer that the contract has been assigned. The notice references that a separate document has been duly recorded in accordance with the Uniform Commercial Code.

Riviera undermines its argument in its own proposed findings of fact. Riviera claims that it entered into a Factoring Agreement with Optical Fiber and that under the agreement, Riviera took a security interest in all of Optical Fiber's accounts receivable. Plaintiff's Proposed Findings of Uncontroverted Facts ("Pl. PFUF") ¶ 1. Plaintiff cites to this agreement and provides the agreement in its appendix. Pl. App. A1-A4.[2] However, the agreement Riviera purports to create the obligation between Riviera and Optical Fiber was never provided to the Government. The Government was not given the opportunity, as required by statute and regulation, to inspect the agreement and assess whether the relationship between the Riviera and Optical Fiber fulfilled the requirements of the Anti-Assignment Acts. See American Nat. Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 17 (1990) (the failure to submit the actual assignment documents hid the true nature of the financing agreement from the agency).

---

[1] "App. __" refers to the appendix attached to defendant's motion for summary judgment.

[2] "Pl. App.__" refers to the appendix attached to plaintiff's cross-motion for summary judgment.

This failure to submit the assignment instrument is especially problematic in this case as the assignment agreement was entered into prior to the award of the contract. The assignment instrument is dated July 7, 1998, and the contract order was placed on February 2, 1999. Therefore, the financing agreement could not contemplate the assignment of the contract. In effect, Riviera argues that the contract proceeds were assigned by assignment instrument entered into prior to award and supplemented by a factoring agreement prepared after award. By failing to provide these documents to the contracting officer, Riviera hid the nature of the parties' relationship. This hidden contractual relationship violates the Anti-Assignment Acts as well as prevents the contracting officer from knowingly waiving the Acts' requirements. American Nat. Bank & Trust Co. v. United States, 22 Cl. Ct. at 17.

As demonstrated in our moving brief, the Anti-Assignment Acts and their implementing regulations are constructed to protect the Government from paying the wrong party and subjecting itself to multiple legal actions. Kingsbury v. United States, 215 Ct. Cl. 136, 144, 563 F.2d 1019, 1024 (1977). Accordingly, the statutes and regulations mandate a specific procedure to perfect an assignment. A portion of that protection is the submission of the actual assignment instrument signed by officers of both companies and certified by their corporate seals. 48 C.F.R. 32.805. These formalized procedures guard against claims such as the one Riviera proffers. Implementation of the requirements prevents companies from arguing at a later date that multiple documents serve as the assignment instrument. The "Notice of Assignment" is not the actual assignment agreement signed by the parties nor does it evidence the basic formalities required by applicable regulations. Accordingly, Riviera's claim that the "Notice of Assignment" serves as the assignment instrument is not supported by the record.

As Riviera did not provide a copy of the assignment agreement to the contracting officer or the disbursing officer, Riviera is not an assignee of the contract pursuant to the terms of the Anti-Assignment Acts.

II. The Contracting Officer Did Not Waive The Requirements Of The Anti-Assignment Acts

As Riviera did not comply with the Anti-Assignment Acts' requirement to submit a copy of the assignment instrument, Riviera argument rests solely upon the alleged waiver of the requirement. Riviera argues that the contracting officer modified the contract to make Riviera the payee of the contract and, therefore, assented to the assignment. However, this assertion is not supported by the modification.

The contracting officer modified the contract, stating "[t]he remit address is changed to Riviera Finance, 3520 Piedmont Road, NE, Suite 100, Atlanta, GA 30305." App. 9. The modification did not change the payee of the contract, as alleged by Riviera, and the name of the contractor remained the same.

This Court has consistently held that a contracting officer may consciously waive the requirements of the Anti-Assignment Acts through his or her actions. Unlike the cases cited by Riviera, the contracting officer in this case did not assent to a change of the payee nor did the contracting officer represent to Riviera that the assignment was valid. In both D&H Distributing v. United States,102 F.3d 542 (1997), and Norwest Bank of Arizona v. United States, 37 Fed. Cl. 605 (1997), the contracting officer affirmatively modified the contract to make the third-party a payee of the contract. Similarly in Tufco v. United States, 222 Ct. Cl. 277, 614 F.2d 740 (1980), the contracting officer orally informed the parties that he would approve the assignment of the contract, and the contracting officer acknowledged the assignment in writing. Each of the cases

cited by the Riviera rely on the basic proposition that a contracting officer actively involved in promoting or approving an assignment may waive the requirements of the act. In each case the Court looked to the actual documents exchanged by the parties to determine whether the contracting officers specifically gave their assent to the assignment.

In this case, the contracting officer simply modified the remit address without expressing any intent to agree to an assignment. Unlike the waiver cases cited by the plaintiff, the contracting officer did not assent to the assignment either orally or in writing. As Riviera and Optical Fiber did not supply the assignment instrument to the Government, Riviera's waiver argument implausibly rests upon the contracting officer's assent to an assignment contract that he had never seen. As demonstrated above, supplying the actual assignment instrument would have revealed to the contracting officer that the parities maintained a financing arrangement prior to the contract award and the assignment may have involved the payments of debt incurred prior to the contract award. Such a finding would have run afoul of the Anti-Assignment Acts as the Acts require the assignment to be made after the allowance of a claim, not before.
31 U.S.C. § 3727(a)(2)(b). Riviera's failure to disclose the contractual relationship between the parties prevented the contracting officer from knowingly waiving the Acts' requirements. American Nat. Bank & Trust Co. v. United States, 22 Cl. Ct. at 17.

Riviera's broad interpretation of the limited role of waiver in the context of assignments undercuts the specific protections contained in the Anti-Assignment Acts and contrasts with the requirement that the Court must find clear assent to the assignment to waive the requirements of the Anti-Assignment Acts.

This case mirrors the facts of Banco Bilboa Vizcaya-Puerto Rico v. United States, 48 Fed.

Cl. 29 (2000). In Banco Bilboa, the contractor provided the contracting officer both notice of the assignment and a copy of the assignment instrument but failed to notify the contractor's surety, a violation of the Anti-Assignment Acts. The Court declined to find a waiver of the Acts' requirements because the contracting officer offered no clear assent to the assignment. The Banco Bilboa Court specifically distinguished the situation presented from the holding in Tufco. The Court explained that absent the allegation of affirmative conduct by the Government manifesting recognition of the assignment, the Government was entitled to summary judgment in its favor. Id. at 35. Similarly, in the case, Riviera can cite to no conduct that demonstrates the affirmative acceptance of the assignment agreement.

## III. The Signature Of A Supply Technician Upon Riviera's Notification Letter Did Not Waive The Requirements Of The Anti-Assignment Acts

Riviera argues that the signature of a supply technician for the Defense Logistics Agency, Sylvia Garcia, binds the Government to the assignment. However, the supply technician had no authority to bind the Government to an assignment or to waive the requirements of the Anti-Assignment Acts. In order to establish a valid contract with the United States, a plaintiff must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) that "the Government representative 'whose conduct is relied upon [had] actual authority. City of El Centro v. United States , 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)).

Authority to bind the Government in contract is essential. Actual authority must be delegated specifically and explicitly, either by Congress or through agency rule-making. City of El Centro, 922 F.2d at 820. Further, the party asserting the existence of a contract with the

United States bears the burden of establishing that the person(s) upon whose alleged promise(s) or representation(s) the party relied had the requisite contracting authority. Heckler v. Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984). Riviera cannot meet this standard. The supply technician had no authority to change the terms of the contract nor did she have authority to waive the terms of the Anti-Assignment Acts.

Additionally, the text of the February 17, 1999 letter does not support Riviera's claim that it constitutes an acknowledgment of the assignment. The letter asks the recipient to confirm that Optical Fiber was owed the amounts listed on its invoice. App. 5. While the letter informs the Government that the parties have entered into an assignment agreement, it does not seek approval of this assignment. The letter serves solely as confirmation that Optical Fiber was owed payment upon an invoice and that Riviera has provided the contracting officer notice of an assignment. As the supply technician has not been granted the authority to bind the Government to a contract and the terms of the letter do not reference any type of assent to the assignment, Riviera's argument is not supportable.

IV. Making Payment Of The Second Invoice To Riviera Does Not Demonstrate An Assent To The Assignment

Riviera alleges that the Government's payment of an invoice dated July 1, 1999, to Riviera demonstrates that the Government waived the requirements of the Anti-Assignment Acts. Assuming, for purposes of argument only, that this payment demonstrates the Government's assent to the assignment after July 1, 1999, the payment does not demonstrate that the Government waived the requirements of the Act on May 10, 1999, the date the Government made payment upon the first invoice. The payment of the second invoice to Riviera occurred

after the payment of the first invoice to Optical Fiber and does not support Riviera's allegation that the Government had waived the requirements of the Anti-Assignment Acts prior to the Optical Fiber Payment.

Although DFAS did pay Riviera based upon the second invoice submitted by Optical Fiber, such a payment does not waive the requirements of the Anti-Assignment Act absent the assent of the contracting officer to the assignment. American Nat. Bank & Trust Co. v. United States, 23 Cl. Ct. 542, 547 (1991) (failure to provide accurate information concerning the assignment instrument violates the Anti-Assignment Acts and payments made to the financial institution are erroneous). As demonstrated in our moving brief, the payment of the second invoice was not made in accordance with a valid assignment, and the Government is entitled to recovery of these funds paid contrary to law.

V. The Court Does Not Possess Jurisdiction To Find That Riviera Is Entitled To Quantum Meruit Damages Pursuant To An Implied-In-Law Contract

Riviera claims that the Government is liable to Riviera based on an implied contract theory. Specifically, Riviera argues that assignment should be enforced upon equitable grounds as the Government received the benefit of the good provided. Riviera does not state whether this implied contract is an implied-in-fact contract or an implied-law-contract. However, Riviera's basis for this claim relies upon a theory of unjust enrichment. Such a claim assumes the existence of an implied-in-fact contract. Glopak Corp. v. United States, 12 Cl. Ct 96, 104, n.6 (1987), aff'd 851 F.2d 334 (Fed. Cir. 1988); D.V. Gonzalez Elec. & General Contractors, Inc. v. United States, 55 Fed. Cl. 447, 460 (2003). This Court does not possess jurisdiction to adjudicate claims of implied-in-law contracts. United States v. Mitchell, 463 U.S. 206, 218

(1983); Trauma Serv. Group v. United States, 104 F.3d 1321, 1327 (Fed. Cir. 1997). While quantum meruit damages may be available in limited circumstances pursuant to the finding of an implied-in-fact contract, Riviera provides no basis for such a determination.

Additionally, the Government has paid for the goods it received. The Government paid the entity named in the contract, Optical Fiber, for the goods the contractor supplied. Pursuant to these facts, Riviera's claim for any type of equitable relief is without basis as the Government has not been provided a windfall or been unjustly enriched.

## CONCLUSION

For all of the foregoing reasons and the reasons set forth in our motion for summary judgment, we respectfully request that the grant the Government's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick

MARK A. MELNICK
Assistant Director

s/ Thomas B. Fatouros

OF COUNSEL:
CYNTHIA CUMMINGS
Senior Associate General Counsel
Defense Finance and Accounting Service GA/CO
Room B712
P.O. Box 182317
Columbus, OH 43218

THOMAS B. FATOUROS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-5958
Fax: (202) 514-7965
Attorneys for Defendant

July 3, 2003