IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RIVIERA FINANCE OF TEXAS, INC., Plaintiff, | ) | |
| v. | ) | No. 02-737C (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S COUNTERSTATEMENT OF FACTS

Pursuant to RCFC 56(d), the United States respectfully submits the defendant's counter-statement of facts in response to plaintiff's motion for summary judgement.

1. On or about July 6, 1998, Riviera entered into a Factoring Agreement ("Agreement") with Optical Fiber Network, Inc. ("Optical Fiber Network"). App. A1-4. Under the Agreement, Riviera took a security interest in all of Optical Fiber Network's accounts receivable and other collateral.

Response: The Government agrees that Riviera and Optical Fiber entering into a financing agreement. Whether Riviera took a security interest in all of Optical Fiber Network's accounts receivable is a legal conclusion that requires no response.

2. Under the terms of the Agreement, Riviera would advance funds to Optical Fiber Network for an assignment of specified receivables. Receivables were assigned to Riviera pursuant to a separate document entitled Schedule of Accounts. App. D-1. According to paragraph 47 of the Factoring Agreement, "[o]nce Riviera has purchased an Account, the Account and the payment from Customer as to the Account is the sole and exclusive property of

Riviera." App. A-3.

Response: Agrees.

3. On August 14, 1998, Riviera perfected its security interest in the Collateral by filing financing statements with the North Carolina Secretary of State and the Guilford County Register of Deeds. App. B1-2

Response: The Government objects to paragraph 3 because it is a conclusion of law. Whether Riviera perfected its security interest is a legal determination that requires no response.

4. On February 2, 1999, the Defense Distribution Center Procurement Office in New Cumberland, Pennsylvania ("DDC-AA"), entered into Contract No. SP310099M7045 with Optical Fiber Network for the provision of optical fiber cable (the "Contract"). App. C1-3. The contract terms provided that Optical Fiber Networks would ship 27,500 feet of fiber optical cable at a price of $1.57 per foot for a total contract price of $43,175.00.

Response: Agrees.

5. On March 3, 1999, Optical Fiber Network assigned to Riviera an account receivable from DDC-AA and the Defense Finance and Accounting Service ("DFAS") in the amount of $44,745.00 (the "Receivable"). Upon assignment, the Receivable became the sole property of Riviera pursuant to the Factoring Agreement. After the Receivable was assigned to Riviera, Riviera advanced funds to Optical Fiber Network in reliance that it would receive payment on the Receivable.

Response: The Government objects to the first and second sentences of paragraph 5 because they are conclusions of law. Whether the proceeds of the contract were assigned to Riviera is a legal determination that requires no response. The Government is unable to agree or

disagree with the third sentence of paragraph 5 because the Government has no knowledge concerning what Riviera relied upon when it entered into a financing agreement with Optical Fiber.

6. Riviera's reliance was based on the fact that, on February 17, 1999, Riviera sent DFAS a letter titled "Confirmation of Payment on Optical Fiber Networks, Inc. Invoices Assigned to Riviera Finance"

Response: The Government is unable to agree or disagree with paragraph 6 because the Government has no knowledge concerning what Riviera relied upon when it entered into a financing agreement with Optical Fiber. The Government agrees that it received the February 17, 1999 letter.

7. Additional notice was provided by DFAS by way of a letter dated February 23, 1999 from David Middleton, the president of Optical Fiber Networks, stating that it would like to amend the Contract to show that Riviera Finance should be the recipient of payments of funds due under the Contract. App. F-1.

Response: The Government objects to paragraph 7 because it is a conclusion of law. Whether the letter constitutes notice is a legal determination that requires no response. The Government agrees that it received the February 23, 1999 letter.

8. The amended Contract was signed by Michael Delcima on behalf of the United States of America on February 26, 1999. App. F-2

Response: Agrees.

9. The final notice to DFAS consisted of Optical Fiber Networks' invoice which stated that all checks under the invoice were to be made payable to Riviera (the "Invoice"). App. G-1.

Response: The Government objects to paragraph 9 because it is a conclusion of law. Whether the invoice constitutes notice is a legal determination that requires no response. The Government agrees that it received Optical Fiber's invoice and that the invoice stated that all checks were to be made payable to Riviera.

10. Despite the fact that Riviera gave these various notices to DFAS that payment on the Receivable should be made directly to Riviera, the payment for the Receivable was sent directly to Optical Fiber Network. App. H-1. On May 14, 1999, Optical Fiber Network then negotiated the check paying the Receivable.

Response: The Government agrees that it made payment directly to Optical Fiber based upon the first invoice submitted and that Optical Fiber negotiated this check.

11. Riviera filed this action on June 26, 2002, in order to recover the amounts due and owing to Riviera from DFAS under the amended Contract and assignment.

Response: Agrees.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick

MARK A. MELNICK
Assistant Director

s/ Thomas B. Fatouros

OF COUNSEL:
CYNTHIA CUMMINGS
Senior Associate General Counsel
Defense Finance and Accounting Service GA/CO
Room B712
P.O. Box 182317
Columbus, OH 43218

THOMAS B. FATOUROS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-5958
Fax: (202) 514-7965

July 3, 2003

Attorneys for Defendant