# In the United States Court of Federal Claims

No. 02-737 C
(Filed: November 19, 2003)

************************************

**RIVIERA FINANCE OF TEXAS, INC.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

************************************

*S. Andrew Jurs*, Charlotte, NC for plaintiff.

*Thomas B. Fatouros*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

**DAMICH,** Chief Judge

### I. Introduction

This case involves a dispute regarding payment for Defense Distribution Office contract No. SP3100-99-M-7045. At issue before this court is a Motion for Summary Judgment brought by Defendant Defense Finance and Accounting Service ("DFAS") against Plaintiff Riviera Finance of Texas, Inc. ("Riviera") and a Cross-Motion for Summary Judgment against the Defense Distribution Center ("DDC") and the DFAS brought by Riviera Plaintiff. For the reasons set forth herein, Defendant's Motion is DENIED and Plaintiff's Motion is GRANTED.

**II. Factual Background**

On February 2, 1999, DDC contracted with Optical Fiber Network ("Optical Fiber") to purchase 27,500 feet of fiber optical cable. In exchange for financing, Optical Fiber assigned payment under the contract to Riviera pursuant to a factoring agreement between Optical Fiber and Riviera entered into on July 6, 1998. The factoring agreement granted Riviera a security interest in all of Optical Fiber's accounts receivables and other collateral in exchange for this financing from Riviera. On February 17, 1999, Riviera sent DFAS an invoice on the contract for $44,745, the first of two payments due under the contract. Prominently printed on the invoice was the notation "NOTICE OF ASSIGNMENT. THIS INVOICE HAS BEEN ASSIGNED TO AND MUST BE PAID DIRECTLY TO RIVIERA FINANCE." The same day, Riviera sent a confirmation of assignment of the contract to DFAS. It was returned to Riviera on March 2, 1999, signed by "Sylvia Garcia". Also on February 17, Optical Fiber sent a "Notice of Assignment" of the contract to DFAS stating that all payments should be "made PAYABLE TO AND MAILED DIRECTLY TO Riviera Finance," and it included Riviera's address. On February 23, Optical Fiber also sent a letter to the DDC Contracting office informing the office of the assignment of payment rights under the contract. Three days later, on February 26, Defendant's contracting officer signed a contract modification with the following wording: "The Remit to Address is changed to the following: Riviera Finance, 3520 Piedmont Road NE, Suite 100, Atlanta, GA 30305." Despite these notices of assignment, on May 10 DFAS paid $44,745–the first of two payments under the contract–to Optical Fiber instead of Riviera, and Optical Fiber negotiated the check four days later. The second payment of $1,982.91 was, however, sent to Riviera on August 2. Optical Fiber subsequently filed for bankruptcy, and Riviera was unable to recover the initial payment. Riviera sued for payment of $44,745 from Defendant under the assignment of contract theory. Defendant counterclaimed for the $1,982.91 it paid to Riviera.

**III. Procedural Posture**

This case is before the Court on a motion for summary judgment filed by Defendant and a cross motion for summary judgment filed by Plaintiff. Summary judgment is appropriate only when there are no genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Facts are material only if they "might affect the outcome of a suit under the governing law," *Id.* at 248. The standard for summary judgment is not changed when both parties file motions for summary judgment. *Murphy Exploration & Prod. v. Oryx Energy*, 101 F.3d 670 (Fed. Cir. 1996).

**IV. Discussion**

Defendant claims that Optical Fiber's assignment of payment to Riviera was invalid because Plaintiff did not comply with the *Assignment of Claims Act*, 31 U.S.C.A. § 3727 (1994), and *Assignment of Contract Act*, 41 U.S.C. § 15 (2000) ("Anti-Assignment Acts"). Riviera argues that Defendant waived the protection of the Anti-Assignment Acts by virtue of its own actions recognizing the assignment. In the alternative, Riviera seeks recovery in *quantum meruit*.

A. Did Plaintiff Comply With the Anti-Assignment Acts?

The Anti-Assignment Acts require the assignee of a contract with the federal Government to "file written notice of the assignment together with a true copy of the instrument of the assignment" both the contract's contracting officer and the disbursing officer.[1] Riviera does not contest the plain meaning of the statute. Instead, Riviera attempts to assert that the February 17 notice of assignment and invoice sent to DFAS notifying it of the assignment of the payments "served as the assignment instrument."[2]

This argument is unconvincing. 48 C.F.R. 32.805 lays out the procedure for properly assigning Government contract claims. Subpart (b) requires that a true copy of the assignment instrument be sent to various named parties and defines "true copy" as "a certified duplicate or photostat copy of the original assignment." Riviera never claims to have sent a true copy of the assignment instrument to Defendant in any of its correspondence.

There are numerous reasons for requiring that a true copy of the assignment instrument be submitted in order to effectuate a valid assignment of a Government contract, including accuracy and efficiency. Foremost among these concerns is "to prevent possible multiple payment of claims, [and] make unnecessary the investigation of alleged assignments." *United States v. Aetna Surety Co.*, 338 U.S. 366, 373 (1949). When compared to this regulatory language and these policy considerations, it is clear that the February 17 notice and invoice were not a "true copy" of the assignment instrument

Failure to comply with statutory requirements of an assignment of payments does not, however, necessarily foreclose a remedy for Riviera. Generally, Riviera would not be entitled to payment, but an assignment is still considered valid if the Government chooses to recognize it despite its legal invalidity. This is done through acts by the Government that show a conscious waiver of the Acts in a particular case.

B. Did Defendant Waive Coverage of the Anti-Assignment Acts Through Its Actions?

It is well established in the case law of this circuit that the Government can waive coverage of the Anti-Assignment Acts, as the Government concedes in this case.[3] This understanding was most clearly laid out in *Maffia v. United States*, 163 F.Supp. 859, 862 (Ct. Cl. 1958), where the court stated that "despite the bar of the Anti-Assignment Statute (41 U.S.C. § 15), the Government, if it

---

[1]41 U.S.C. § 15 (b)(3)(A), (C) (2000).

[2]Opposition and Response to Defendant's Proposed Findings of Uncontroverted Facts, p.3, ppg. 9.

[3]Defendant's Motion for Summary Judgment, 9.

chooses to do so, may recognize an assignment." This principle has been affirmed numerous times. *See, e.g. D & H Distrib. Co. v. United States*, 102 F.3d 542, 546 (Fed. Cir. 1996)("It is well established, however, that the Government can waive the statutory prohibitions against the assignment of contract rights if the contracting officer gives clear consent to the assignment.); *Tuftco Corp. v. United States*, 614 F.2d 740 (Ct. Cl. 1980).

Waiver must be shown through affirmative acts, but it is unclear precisely what acts by the Government constitute waiver. The general test for waiver was set forth in *Tuftco* when the court declared:

> It is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments.

*Tuftco*, 614 F.2d at 746. In *Tuftco* and subsequent cases, courts looked to a variety of factors to evaluate which party was favored by the totality of the circumstances, including whether: (1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment. *See id*. At 745-6; *D & H Distrib. Co.*, 102 F.2d at 546*; Banco Bilboa Vizcaya-Puerto Rico v. United States*, 48 Fed. Cl. 29, 34 (2000); *Norwest Bank Arizona v. United States*, 37 Fed. Cl. 605, 610 (1997); *American Nat'l Bank & Trust Co. of Chicago v. United States*, 22 Cl. Ct. 7 (1990); *American Fin. Assocs. v. United States*, 5 Cl. Ct. 761 (1984). While these factors are not meant to be exhaustive, and all need not be present in a given case, each is present in this case and deserves examination.

1. Assignor and/or Assignee Sent Notice of Assignment to the Government.

Both the assignor, Optical Fiber, and assignee Riviera sent notice to the Government of the assignment of payment rights under the contract. Riviera's confirmation letter of February 17 notified DFAS, the disbursing agency, of the assignment. Optical Fiber also notified DFAS on the same day by letter, and notified DDC, the contracting agency, 6 days later with its February 23 letter. Thus, both the contracting and disbursing agencies were notified of the assignment by Optical Fiber, the assignor; and the disbursing agency was notified by Riviera, the assignee.

There is also no question that the notice was received by the Government. In the status conference of November 20, 2003, the Government's Attorney, Thomas Fatourous, admitted that "The Government acknowledges that we had notice of a purported assignment, both the contracting

agency and the disbursing agency."[4]

2. The Contracting Officer Signed the Notice of Assignment.

There is a lack of clarity regarding the authority of the party who signed the notice of assignment. The signature on the February 17 confirmation letter is that of Sylvia Garcia, referred to by the Government as both a contracting officer assistant and a supply technician.[5] Immediately above the signature line where Ms. Garcia signed the confirmation is the following statement: "The undersigned acknowledges that he/she has the authority to sign this statement on behalf of the account debtor." The Government asserts that "the signature of a supply technician . . . had no authority to bind the Government to an assignment or waive the requirements of the Anti-Assignment Acts." While the exact reach of Ms. Garcia's authority is unclear, it is unnecessary in this case to determine precisely how far her authority extended. Her returning of the confirmation gave Riviera reason to believe that the assignment had been approved by someone with the Government. Even assuming, arguendo, that Ms. Garcia had absolutely no actual authority to act on behalf of the Government, her action gave Riviera some reason to believe that the assignment had been acknowledged.

The Government claims that the facts in this case mirror those in *Banco Bilbao Vizcaya-Puerto Rico v. United States*, 48 Fed. Cl. 29 (2000), particularly as they relate to acknowledgment of the assignment by the Government. In *Banco Bilbao*, a contractor attempted to assign its payment rights under a construction contract to Banco Bilbao. While the bank attempted to properly complete the assignment, it did not follow the proper formalities to do so, and the amount and type of notice of the assignment that it gave to the Government was unclear. It should first be noted that *Banco Bilbao* is not binding precedent on this Court, but to the extent this case is accepted as persuasive, it tends to undermine the Government's position. In *Banco Bilbao*, this Court noted that "[w]aiver of the Act has only been recognized where the government has either affirmatively acknowledged an assignment in writing or made payments consistent with the alleged assignment." *Banco Bilbao*, 48 Fed. Cl. at 34. The Court also found that "[i]n contrast to *Tuftco*, in this case the BOP [Bureau of Prisons, the contracting and disbursing agency in the case] never took a single affirmative step manifesting recognition of the assignment." *Id.* at 35. In the present case, in contrast, the Government took several affirmative steps to acknowledge the assignment. In addition to Ms. Garcia's return of Riviera's confirmation letter, the contracting officer modified the contract, apparently in response to Riviera's request to do so, and the disbursing agency sent payment to Riviera (both actions are discussed more fully below). These subsequent actions end many similarities between these two cases and actually distinguish the cases in a way that supports Riviera's position. *Banco Bilbao* recognized the importance of both an acknowledgment of the assignment and payments made in accordance with it.

---

[4]Status Conference of November 20, 2002 at 10. (No.: 02-737).

[5]*Id*. at 7, "Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment" at 6.

The exact extent of Ms. Garcia's authority is also irrelevant for purposes of summary judgment, in keeping with the standard that facts are material only if they might affect the outcome of a case under the governing law. Even if viewed most favorably to the nonmoving party, presuming that Ms. Garcia in fact had absolutely no authority to modify a contract, this fact still does not affect the outcome of the case. Her authority is only one of a variety of factors to be considered under a totality of the circumstances test, and is not necessarily a decisive factor.

This action should be viewed as one factor in the totality of the circumstances test. Under the totality of the circumstances test, Ms. Garcia's signing and returning Riviera's confirmation letter is a factor that weighs against the Government even if, for purposes of summary judgment, it is taken that the signed confirmation letter on its own is not enough to recognize the assignment. While this factor is the weakest link in Riviera's argument, it is not dispositive. Under a totality of the circumstances test, this weighs against the Government, albeit slightly.

3. The Contracting Officer Modified the Contract According to the Assignment.

On February 26, three days after Optical Fiber's letter was sent to DDC, Michael Delcima, the contracting officer for the project, modified the contract in favor of Riviera. Specifically, the change noted "The Remit to Address is changed to the following: Riviera Finance, 3520 Piedmont Road NE, Suite 100, Atlanta, GA 30305."

The Government argues that the contracting officer's actions do not constitute a modification of the contract, but rather an address change for the payee. This argument is unconvincing. The contract modification was made only a few days after notification of the assignment of the contract was given to the Government by both Optical Fiber and Riviera. In fact, it was made only three days after Optical Fiber sent its notification of the assignment to DDC (where Mr. Delcima worked) and just over a week after notice was sent by Optical Fiber to DFAS, the disbursing agency.[6] The Government's argument would have more merit if the modification only noted a different address for payments to be sent to, rather than both a different address and payee for payments. The inclusion of an entirely new entity in the contract modification, however, leads to the conclusion that the alteration was made to reflect and acknowledge the realities of the assignment.

This action is very similar to that taken in *D & H Distributing Co*. There, the Government

---

[6]It is unclear from the record whether Optical Fiber's February 23 letter was sent via regular mail or by another delivery means, such as overnight mail or fascimile. If it was sent in such a manner that it would have reached Mr. Delcima within a short amount of time, then it is more likely that the change would be in response to that request. Regardless, notice was sent to the Government by both parties shortly before the change was made, and it is probable that the change was made in response to one or more of the notifications that were sent to the Government.

awarded a contract for computer hard drives to Computer Integrated Management (CIM). D & H Distributing Company was a supplier of CIM, and was concerned about extending credit to CIM. As a condition of supplying credit, D & H demanded that the contract be modified to make D & H a joint payee along with CIM, and sent the contracting officer a proposed joint payment agreement. Instead of executing the proposed agreement, the contracting officer modified the contract to make CIM and D & H joint payees. The modification changed the payee and address information from CIM alone to CIM and D & H, and added D & H's address for payment. As with this case, the disbursing authority improperly issued payment, making the check payable to CIM alone. On these facts, the Federal Circuit concluded that the contracting officer "clearly assented to the transfer of rights under the contract . . . because the contracting officer expressly adopted the new payment arrangement as part of the contract." *D & H Distrib. Co.*, 102 F.3d at 546.

In *D & H*, the Federal Circuit agreed with D & H that it was entitled to recover under the facts as a third party beneficiary. However, the Court noted that "[t]he same result obtains if . . . the contract modification is regarded not as giving D & H the status of a third party beneficiary, but as constituting an assignment of rights under the contract from CIM to D & H." *Id.* Even if this statement is read as dicta, it is nonetheless convincing. Under the facts of this case, the theories of recovery as an assignee and recovery as a third party beneficiary are extremely similar, and appropriately reach the same result.

4. Government Sent Payments to the Assignee Pursuant to the Assignment.

It is also uncontested that the Government sent the second of the two payments to Riviera Finance. The Government claims that the payment was sent in error,[7] while Riviera claims the payment is evidence of recognition of the assignment.[8] Considering that the payment occurred after Riviera and Optical Fiber requested a change in payee designation, and after the Government actually changed this designation, it seems unlikely that the payment can be considered an accident. Regardless of which assertion is correct, the payment was indisputably made to Riviera. Actual payment to a purported assignee was held in *Tuftco* to be "perhaps [the] most significant[]" factor in acknowledgment of an assignment, *Tuftco,* 614 F.2d at 746.

C. Recovery in *Quantum Meruit*

Because this Court finds that the Government waived the requirements of the Anti- Assignment Acts and accepted the assignment, it is unnecessary to reach the question of whether or not recovery in quantum meruit is appropriate.

---

[7]Status Conference of November 20, 2002 at 10. (No.: 02-737) at 8.

[8]"Plaintiff's Brief and Response to Defendant's Motion for Summary Judgment" at 6.

D. The Government's Counterclaim

Because it is held that the Government accepted the assignment, the Government is not entitled to recover the second payment, of $1,982.91, which it made to Riviera.

**V. Conclusion**

In sum, the Government's actions show a pattern of behavior consistent with recognition of the assignment. The Government was notified of the assignment by both parties, confirmed that it knew of the assignment without objecting to it, modified the contract in accordance with the requests of both assignor and assignee, and actually made payment under the contract as modified. Under the totality of the circumstances test, the Government's actions constitute recognition of an assignment. Because the Government recognized the assignment, it is obliged to fulfill its payment obligations under the contract as assigned. The Plaintiff is entitled to collect the amount due to it under the contract and the Government is not entitled to recover the payment made to Riviera. As a result, judgment is entered for Plaintiff in the amount of $44,745.

**IT IS SO ORDERED**

S/Chief Judge Edward J. Damich